Jerry P. CHILDS and Childs & Bishop, Inc., Petitioners,

v.

Joseph HAUSSECKER and Gail Haussecker, Respondents.

HUMBLE SAND & GRAVEL, INC., et al., Petitioners,

v.

Jose L. MARTINEZ, et ux., Respondents.

Nos. 97–0231, 97–0324.

Supreme Court of Texas.

Argued Jan. 6, 1998.

Decided July 3, 1998.

Rehearing Overruled Sept. 24, 1998.

---

**169.** *See* 49 C.F.R § 571.208, S4.5.3.

Gregory J. Lensing, Charles T. Frazier, Jr., Dallas, for Petitioners in No. 97-0231.

Robert G. Taylor, II, George E. Cire, Jr., Cletus P. Ernster, III, Houston, for Respondents in No. 97-0231.

Paul J. Holmes, Joe Michael Dodson, Gordon R. Pate, Beaumont, Stephen Connell Ashley, Odessa, James L. Ware, George P. Pappas, Richard A. Sheehy, Raymond T. Matthews, Timothy J. Hogan, Jacqueline M. Houlette, William C. Book, Jr., Houston, Timothy Yeats, Big Spring, W. Bruce Williams, Midland, David Brill, Houston, for Petitioners in No. 97-0324.

Greg Thompson, M. Diane Dwight, Lance P. Bradley, Beaumont, Robert E. White, Odessa, Jill S. Chatelain, Beaumont, for Respondents in No. 97-0324.

HANKINSON, Justice, delivered the opinion of the Court, in which PHILLIPS, Chief Justice, ENOCH, SPECTOR, BAKER and ABBOTT, Justices, joined.

In these two causes we address the correct formulation and application of the discovery rule in the latent occupational disease context. In reaching that formulation, we balance our concern that diligent plaintiffs be able to pursue meritorious claims with the need to prevent Texas courts and defendants from being inundated with premature or speculative claims. Accordingly, we adopt the following rule in latent occupational disease cases: a cause of action accrues whenever a plaintiff's symptoms manifest themselves to a degree or for a duration that would put a reasonable person on notice that he or she suffers from some injury and he or she knows, or in the exercise of reasonable diligence should have known, that the injury is likely work-related.

In *Haussecker v. Childs*, Joseph and Gail Haussecker sued Jerry P. Childs and Childs & Bishop, Inc., for legal malpractice. The Hausseckers alleged that Childs had negligently and erroneously advised them that the statute of limitations barred their silicosis-

related claims. The trial court granted summary judgment for Childs on the grounds that the Hausseckers' claims were in fact time-barred when they consulted with Childs soon after receiving a confirmed silicosis diagnosis on April 3, 1990. The court of appeals reversed and remanded, holding that a fact question about whether the Hausseckers' claims were barred by limitations before they consulted with Childs precluded summary judgment. 935 S.W.2d 930.

In *Martinez v. Humble Sand & Gravel, Inc.*, Jose Martinez sued numerous manufacturers and suppliers of sandblasting equipment and materials, claiming he contracted silicosis from his work as a sandblaster. The trial court granted summary judgment for the defendants on all claims. The court of appeals affirmed in part and reversed and remanded in part, holding that a fact question about when Martinez should have discovered the permanent nature of his injury precluded summary judgment. 940 S.W.2d 139.

Applying the rule we have crafted to these causes, we conclude that in *Childs*, summary judgment was improper. Initially, Haussecker diligently consulted several doctors about the cause of his injuries, but was repeatedly assured that his symptoms were not work-related. Childs offered no summary judgment evidence indicating whether Haussecker continued to consult doctors from 1978 to 1988 or, assuming he had not, whether Haussecker's idleness during this time kept him from discovering that he had an occupational illness. Under these circumstances, a material fact question exists regarding whether Haussecker discovered or, through reasonable care and diligence, should have discovered before April 1988 that he likely suffered from an occupational disease. In *Martinez*, we conclude that summary judgment was likewise improper. Although Martinez failed to exercise reasonable diligence by not consulting a doctor until eleven months after he was on notice of an injury that he suspected might have been work-related, Humble Sand & Gravel did not present any evidence to establish as a matter of law that Martinez could have discovered he had a work-related injury had he conducted a diligent investigation. Accordingly, we

affirm the court of appeals' judgments in both *Childs* and *Martinez*.

## I

Haussecker and Martinez suffer from the occupational disease known as silicosis. This disease results from "occupational exposure to and inhalation of silica dust over a period of years" and is "characterized by a slowly progressive fibrosis of the lungs." STEDMAN'S MEDICAL DICTIONARY 1422 (25th ed.1990); *see also Texas Employers' Ins. Ass'n v. Etheredge*, 154 Tex. 1, 272 S.W.2d 869, 872–73 (1954) (describing silicosis and its development). Determining when the plaintiffs' causes of action accrued in these cases is a fact-intensive inquiry that requires us to set forth the chronology in some detail.

### Childs v. Haussecker

Joseph Haussecker began working as a sandblaster for AMF Tuboscope in September 1961. Two years later, AMF transferred him to its "pipe pickling" operation because he complained about spitting up blood. Haussecker's pipe pickling duties involved cleaning used pipe with paraffin, sulphur, oil, and acid. After working as a pickler, Haussecker became a leadman, which required him to perform an assortment of jobs, including sandblasting, coating, and loading. During his time at AMF, Haussecker was exposed to and inhaled significant quantities of silica dust and sand, as well as toxic fumes.

In September 1967, Haussecker began experiencing respiratory problems. Two months later, he sought medical treatment from his family doctor, Dr. E.W. McCullough. Haussecker complained about shortness of breath, wheezing, coughing, and a general feeling of being ill. After taking x-rays and reviewing Haussecker's employment history, Dr. McCullough prescribed pills to alleviate Haussecker's wheezing. Dr. McCullough also requested that Haussecker return in six weeks, but Haussecker chose not to return because he "didn't know if [Dr. McCullough] was going to do anything for [him] or not."

In December 1967, Haussecker visited Dr. Huffman at the McKnight Hospital in San

Angelo.[1] After taking x-rays and administering a sputum test, Dr. Huffman informed Haussecker that something was seriously wrong with him and that he would receive a letter in the mail. The letter never arrived. When Haussecker later inquired about the letter, officials at McKnight asked him to return for further testing, which Haussecker did not do.

In May 1968, Haussecker consulted Dr. McCullough for a second time. After taking more x-rays and conducting numerous tests, Dr. McCullough told Haussecker that he had problems related to his prostate gland. That same month, Haussecker reported to Midland Hospital because he had a prolonged fever and was coughing up blood and pus. Dr. McCullough again visited with Haussecker, and, this time, opined that Haussecker suffered from lymphoma or Hodgkin's disease.

Following Haussecker's brief stay in Midland Hospital, Dr. Morales, a lung specialist, treated Haussecker at Odessa Medical Center Hospital. After performing a bronchoscopy on Haussecker's lung in June 1968, Dr. Morales diagnosed Haussecker with granuloma of the right lung.

Both Dr. Morales and Dr. McCullough told Haussecker that his illness was not work-related. Dr. Morales did advise Haussecker not to return to his job at AMF, however. Further, because one of Haussecker's coworkers had died of work-related silicosis and others had health problems similar to his own, Haussecker formed his own opinion that he too suffered from silicosis.

Haussecker was bed-ridden from June 1968 to January 1969. In August 1968, he gave notice to his employer and filed a worker's compensation claim with the Industrial Accident Board, alleging that he had a work-related disease. The IAB denied his claim.

On November 6, 1968, Haussecker sued AMF's worker's compensation carrier, Liber-ty Mutual Insurance Company. In his petition, Haussecker alleged that the work he performed for AMF had "caused severe and permanent damage to [his] lungs and chest and the glands and soft tissues of the chest, neck, and face, and ha[d] caused [him] to have the disease of silicosis." Attorney Jerry P. Childs eventually took over Haussecker's case, but determined he could no longer continue the representation in good faith because, like the two other attorneys who had examined the case, he could not find any evidence relating Haussecker's health problems to his employment at AMF or a doctor who would provide a diagnosis of silicosis. The suit was dismissed for want of prosecution in 1972.

Haussecker's health continued to deteriorate. He stopped working in 1978 and began receiving social security disability. Health problems continued to plague him over the next decade.

In May 1988, Haussecker was examined by Dr. McKenna, a lung specialist, while in the hospital for a hand infection. Dr. McKenna informed Haussecker that, based on his symptoms and from Dr. McKenna's experience with other employees at AMF, he believed Haussecker had silicosis. Dr. McKenna performed a lung biopsy in February 1990, and diagnosed Haussecker with work-related silicosis in April 1990.

Armed with a confirmed diagnosis, the Hausseckers met with Childs on April 26, 1990, to determine whether he could reopen Haussecker's previously-abandoned compensation claim. After reviewing the file and the relevant statutes, Childs told the Hausseckers that too much time had passed for him to be able to do anything about a claim that Haussecker had filed twenty years ago.

In August 1992, the Hausseckers contacted attorney Mike Martin after seeing his name in a local newspaper article about silicosis injuries. Martin, who had represented other

---

1. The record is unclear about whether Haussecker in fact met with Dr. Huffman at McKnight. When relaying the chronology in his response to defendants' first set of interrogatories and in his April 1995 deposition, Haussecker does not mention ever visiting Dr. Huffman or going to McKnight. However, Haussecker testified at a deposition in January 1969 to the facts recited in this opinion. Because Haussecker never disavowed his January 1969 testimony about visiting McKnight, we take it as true that these events did in fact occur as Haussecker stated in his 1969 deposition.

clients in silicosis cases, filed a products liability lawsuit on the Hausseckers' behalf in April 1993. The trial court granted summary judgment on limitations in March 1994 on the basis that the Hausseckers filed suit more than two years after a doctor diagnosed Haussecker with work-related silicosis.

The Hausseckers later filed this legal malpractice suit against Childs and his law firm, alleging breach of fiduciary duty, negligence, gross negligence, and Deceptive Trade Practices–Consumer Protection Act violations. The trial court granted summary judgment for Childs on the grounds that the Hausseckers' potential claims were barred by the statute of limitations before the Hausseckers met with Childs on April 26, 1990. The court of appeals reversed and remanded, holding that the Hausseckers had raised a fact issue about whether the discovery rule saved their personal injury and loss of consortium claims from being time-barred as of the date they consulted Childs. 935 S.W.2d 930.

### Humble Sand & Gravel v. Martinez

Jose Martinez worked as a sandblaster from 1978 to 1984 for ICO, Inc., d/b/a Spincote Plastic Coating Company, and from 1984 to 1986 for LTV. On September 13, 1989, he filed a worker's compensation claim for "a lung disease arising out of and in the course of his employment." Martinez stated on his claim form that the disease first manifested itself on August 31, 1989. He later testified in his deposition, however, that he filed the claim only "as a precaution" because he was experiencing minor breathing problems in 1989, and because his brother, who was also a sandblaster, had been diagnosed in 1985 with a work-related lung ailment known as silicosis. Martinez's employer's insurance carrier opposed the worker's compensation claim, which is still pending.

Martinez first consulted a doctor about his breathing problems in September 1990 when his attorney sent him to Dr. Stephen Wiesenfield. Martinez alleges that he could not visit a doctor any sooner because his employer's compensation insurer refused to pay for his medical treatment, and he could not afford a doctor on his own. Dr. Wiesenfield informed Martinez that something was wrong and rec-

ommended a biopsy, but Martinez did not comply because, again, he allegedly could not afford it.

A year later, arrangements were made for Dr. Joseph Viroslav to perform Martinez's biopsy. On September 23, 1991, Dr. Viroslav wrote Dr. Wiesenfield, informing him that Martinez probably had silicosis. On October 7, 1991, Dr. Wiesenfield told Martinez he had silicosis.

On August 13, 1992, Martinez sued Humble Sand & Gravel, as well as other manufacturers and suppliers of sandblasting equipment, for products liability, negligence, breach of warranty, and conspiracy. In addition, his two children sued for loss of parental consortium. The trial court granted summary judgment for Humble Sand & Gravel and the other defendants on substantive grounds as to the conspiracy claims, and limitations grounds as to the remaining claims. The court of appeals affirmed as to the breach of warranty and conspiracy claims, and reversed as to the remaining claims, holding that a fact issue existed about when Martinez knew or should have known about the nature of his injury. 940 S.W.2d 139.

### II

■ A plaintiff must commence a suit for personal injuries within two years after the day the cause of action accrues. *See* Tex. Civ. Prac. & Rem.Code § 16.003(a). Because the accrual date in section 16.003(a) is not defined by statute, the courts are charged with the responsibility of articulating the rules governing accrual. *See, e.g., S.V. v. R.V.,* 933 S.W.2d 1, 4 (Tex.1996); *see also Developments in the Law: Statutes of Limitations,* 63 Harv. L.Rev. 1177, 1185 (1950) (hereinafter *"Developments"*). In most cases, a cause of action accrues when a wrongful act causes an injury, regardless of when the plaintiff learns of that injury or if all resulting damages have yet to occur. *See S.V.,* 933 S.W.2d at 4. However, in those rare cases when "the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable," *Computer Assocs. Int'l, Inc. v. Altai, Inc.,* 918 S.W.2d 453, 456 (Tex.1994), we apply a judicially-

crafted exception to the general rule of accrual, known as the discovery rule. *But see Diaz v. Westphal*, 941 S.W.2d 96, 99 (Tex. 1997) (noting that the discovery rule has been abolished by statute in cases governed by the Medical Liability Act). Under this rule, which we first adopted in *Gaddis v. Smith*, 417 S.W.2d 577, 580 (Tex.1967), a cause of action does not accrue until a plaintiff knows or, through the exercise of reasonable care and diligence, "should have known of the wrongful act and resulting injury." *S.V.*, 933 S.W.2d at 4 (citing *Trinity River Auth. v. URS Consultants, Inc.*, 889 S.W.2d 259, 262 (Tex.1994)).

■ The parties in both causes agree that, in accordance with the principles enunciated in *Altai*, cases involving latent occupational diseases should be governed by the discovery rule. We likewise agree.

Our courts of appeals have recognized that cases involving latent injuries or diseases sometimes merit application of this rule. *See, e.g., Casarez v. NME Hosps., Inc.*, 883 S.W.2d 360, 365 (Tex.App.—El Paso 1994, writ dism'd by agr.) (human immunodeficiency virus contracted by treating nurse when exposed to patient's blood); *Allen v. Roddis Lumber & Veneer Co.*, 796 S.W.2d 758, 761 (Tex.App.—Corpus Christi 1990, writ denied) (health problems due to formaldehyde); *Pecorino v. Raymark Indus.*, 763 S.W.2d 561, 568 (Tex.App.—Beaumont 1988, writ denied) (mesothelioma caused by asbestos exposure). Indeed, almost every jurisdiction applies some formulation of the discovery rule, either legislatively or judicially, in latent injury and disease cases.[2] Compelling reasons explain

---

2. *See, e.g.,* Ala.Code § 6–2–30(b)(claims for exposure to asbestos); *Cameron v. State*, 822 P.2d 1362, 1365–66 (Alaska 1991)(lung condition caused by dust inhalation); *Mack v. A.H. Robins Co., Inc.*, 759 F.2d 1482, 1483 (9th Cir.1985)(per curiam)(applying Arizona law)(pelvic inflammatory disease caused by intrauterine device); *Velasquez v. Fibreboard Paper Prod. Corp.*, 97 Cal. App.3d 881, 159 Cal.Rptr. 113, 117 (1979)(asbestosis); *Miller v. Armstrong World Indus., Inc.*, 817 P.2d 111, 113 (Colo.1991)(en banc)(same); *Ricciuti v. Voltarc Tubes, Inc.*, 277 F.2d 809, 813 (2d Cir.1960)(applying Connecticut law)(berylliosis); *Bendix Corp. v. Stagg*, 486 A.2d 1150, 1152–53 (Del.1984)(asbestosis); *Wilson v. Johns–Manville Sales Corp.*, 684 F.2d 111, 116 (D.C.Cir.1982)(applying District of Columbia law)(asbestosis); *Copeland v. Armstrong Cork Co.*, 447 So.2d 922, 924 (Fla.Dist.Ct.App.1984), *aff'd in relevant part and quashed in part on other grounds sub. nom. Celotex Corp. v. Copeland*, 471 So.2d 533 (Fla.1985)(asbestosis); *King v. Seitzingers, Inc.*, 160 Ga.App. 318, 287 S.E.2d 252, 254–55 (1981)(lead poisoning); *Carvalho v. Raybestos–Manhattan, Inc.*, 794 F.2d 454, 456 (9th Cir.1986)(applying Hawaii law)(asbestosis); *Nolan v. Johns–Manville Asbestos*, 85 Ill.2d 161, 52 Ill.Dec. 1, 421 N.E.2d 864, 868 (1981)(asbestosis); *Barnes v. A.H. Robins Co., Inc.*, 476 N.E.2d 84, 87–88 (Ind.1985)(pelvic inflammatory disease caused by intrauterine device); *Montag v. T H Agriculture & Nutrition Co., Inc.*, 509 N.W.2d 469, 470 (Iowa 1993)(liposarcoma caused by toxic chemical); Kan. Stat Ann. § 60–3303 (claims for exposure to "harmful materials," including asbestos); *Louisville Trust Co. v. Johns–Manville Prod. Corp.*, 580 S.W.2d 497, 499 (Ky.1979)(holding that discovery rule applies to tort actions for injury resulting from a latent disease caused by exposure to a harmful substance); *Griffin v. Kinberger*, 507 So.2d 821, 823–24 (La.1987)(retrolental fibroplasia caused by alleged negligent administration of oxygen to premature child); *Harig v. Johns–Manville Products Corp.*, 284 Md. 70, 394 A.2d 299, 306 (1978)(extending discovery rule to cases involving latent diseases); *Olsen v. Bell Tel. Lab., Inc.*, 388 Mass. 171, 445 N.E.2d 609, 611–612 (1983)(toluene diisocyanate asthma); *Larson v. Johns–Manville Sales Corp.*, 427 Mich. 301, 399 N.W.2d 1, 6 (1986)(asbestosis); *Hildebrandt v. Allied Corp.*, 839 F.2d 396, 398 (8th Cir.1987)(applying Minnesota law)(respiratory ailment caused by exposure to toluene diisocyanate); *Sweeney v. Preston*, 642 So.2d 332, 333–34 (Miss.1994)(explaining that discovery rule applies when an injury or disease is latent); *Elmore v. Owens–Illinois, Inc.*, 673 S.W.2d 434, 436 (Mo.1984)(asbestosis); Neb. Rev.Stat § 25–224(5)(claims for exposure to asbestos); N.H.Rev.Stat. Ann § 508:4 (codifying discovery rule); *Vispisiano v. Ashland Chem. Co.*, 107 N.J. 416, 527 A.2d 66, 72 (1987)(applying discovery rule to toxic-tort case); N.Y. C.P.L.R. 214–c(2)(codifying discovery rule in latent injury cases); *Biesterfeld v. Asbestos Corp. of Am.*, 467 N.W.2d 730, 736 (N.D.1991)(asbestosis); *Burgess v. Eli Lilly & Co.*, 66 Ohio St.3d 59, 609 N.E.2d 140, 143–44 (1993)(injuries from exposure to diethylstilbestrol); *Williams v. Borden, Inc.*, 637 F.2d 731, 734 (10th Cir.1980)(applying Oklahoma law)(noting that Oklahoma likely would apply the discovery rule in occupational disease cases); *Schiele v. Hobart Corp.*, 284 Or. 483, 587 P.2d 1010, 1013–14 (1978)(illness caused by exposure to polyvinyl chloride fumes); *Cochran v. GAF Corp.*, 542 Pa. 210, 666 A.2d 245, 248 (1995)(asbestosis); S.D. Codified Laws § 15–2–12.2 (codifying discovery rule for product liability actions); *Wyatt v. A–Best Co., Inc.*, 910 S.W.2d 851, 854 (Tenn.1995)(injuries caused by exposure to asbestos); *White v. Johns–Manville Corp.*, 103 Wash.2d 344, 693 P.2d 687, 694 (1985)(en banc)(mesothelioma from exposure to asbestos); *DeRocchis v. Matlack, Inc.*, 194 W.Va. 417, 460

why most courts have chosen to apply the discovery rule in these cases rather than the theory that a cause of action accrues when a plaintiff is either first exposed or last exposed to a toxic substance.

First, a latent injury or disease is the epitome of the type of injury that is often inherently undiscoverable within the applicable limitations period. *See, e.g.,* Green, *The Paradox of Statutes of Limitations in Toxic Substances Litigation,* 76 Cal. L.Rev. 965, 972–76 (1988) (hereinafter "Paradox") (providing five reasons why insidious disease cases are fundamentally different from the typical tort case). Unlike traumatic injury cases, a plaintiff who suffers from a latent injury or disease typically does not and cannot immediately know about the injury or its cause because these injuries often do not manifest themselves for two or three decades following exposure to the hazardous substance. *See, e.g.,* Landrigan & Baker, *The Recognition and Control of Occupational Disease,* 266 J.A.M.A. 676 (1991); Travis, *Allegations, in* TOXIC TORTS: LITIGATION OF HAZARDOUS SUBSTANCE CASES 365, 372 (Nothstein ed., 1984); Note, *The Fairness and Constitutionality of Statutes of Limitations for Toxic Tort Suits,* 96 HARV. L.REV. 1683, 1683 (1983). As the United States Supreme Court noted over forty years ago when discussing the statute of limitations in the context of a silicosis case: " 'no specific date of contact with the harmful substance can be charged with being the date of injury, inasmuch as the injurious consequences of the exposure are the product of a period of time rather than a point of time....' " *Urie v. Thompson,* 337 U.S. 163, 170, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949) (quoting *Associated Indem. Corp. v. Indus. Accident Comm'n,* 124

Cal.App. 378, 12 P.2d 1075, 1076 (1932)). Moreover, even when symptoms do arise that make the fact of injury objectively verifiable, the injury and its etiology are difficult to diagnose and ascertain because of the lengthy latency period, the many potential causes of the specific symptoms, and some physicians' lack of education and experience in identifying occupational diseases. *See, e.g., Etheredge,* 272 S.W.2d at 872–73 (explaining the nature of silicosis and its slow progression); Landrigan & Baker, *The Recognition and Control of Occupational Disease,* 266 J.A.M.A. 676 (1991); Putzrath et al., *The Diagnosis of Occupational or Environmental Illness & Injury, in* TOXIC TORTS: LITIGATION OF HAZARDOUS SUBSTANCE CASES 104, 105 (Nothstein ed., 1984); Green, *Paradox,* 76 Cal. L.Rev. 965, 983 (1988)(noting that "the diagnosis of insidious disease and the determination of its etiology are fraught with difficulty, uncertainty, and error"). Under these circumstances, permitting the cause of action of a "blamelessly ignorant" plaintiff to accrue before he or she could possibly have been aware of the injury would be unjust.[3] Likewise, we agree with amici Owens–Illinois, Inc., and the American Board of Trial Advocates that requiring courts and defendants to expend their limited resources on premature litigation of speculative claims is neither efficient nor desirable. *See, e.g., Wilson v. Johns–Manville Sales Corp.,* 684 F.2d 111, 120 (D.C.Cir.1982).

■ Second, while we are mindful of the important protective purposes served by strict application of statutes of limitations, these purposes are not betrayed by deferring accrual in latent disease cases until an innocent and diligent plaintiff discovers his or her injury and its likely cause. Statutes of limitations help ensure that the search for truth

S.E.2d 663, 667 (1995)(respiratory injuries from exposure to toluene diisocyanate); *Hansen v. A.H. Robins, Inc.,* 113 Wis.2d 550, 335 N.W.2d 578, 583 (1983)(pelvic inflammatory disease); *Nowotny v. L & B Contract Indus., Inc.,* 933 P.2d 452, 456 (Wyo.1997)(acknowledging that Wyoming is a "discovery state").

3. *See, e.g., Strickland v. Johns–Manville Int'l Corp.,* 461 F.Supp. 215, 217 (E.D.Tex.1978); *S.V.,* 933 S.W.2d at 6 (citing *Gaddis v. Smith,* 417 S.W.2d 577, 581 (Tex.1967)); *accord Urie v. Thompson,* 337 U.S. 163, 169–70, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949); *Burns v. Jaquays Mining*

*Corp., D.W.,* 156 Ariz. 375, 752 P.2d 28, 30 (1987); *Anderson v. Sybron Corp.,* 165 Ga.App. 566, 353 S.E.2d 816, 817 (1983), *aff'd,* 251 Ga. 593, 310 S.E.2d 232 (1983); *Vispisiano,* 527 A.2d . at 72–73; *Pierce v. Johns–Manville Sales Corp.,* 296 Md. 656, 464 A.2d 1020, 1025 (1983); *see also* Glimcher, *Statutes of Limitations and the Discovery Rule in Latent Injury Claims: An Exception or the Law?,* 43 U. PITT. L.REV. 501, 517 (1982); Birnbaum, *'First Breath's' Last Gasp: The Discovery Rule in Products Liability Cases,* 13 FORUM 279, 285–86 (1977).

is not impaired by stale evidence or the loss of evidence, and that defendants are guaranteed a point of repose for past deeds after a reasonable period. *See, e.g., S.V.*, 933 S.W.2d at 3; *Altai, Inc.*, 918 S.W.2d at 455; *see also Developments*, 63 HARV. L.REV. 1177, 1185–86 (1950). In latent injury or disease cases, however, much of the crucial evidence improves with the passage of time because the state of scientific knowledge becomes more sophisticated and the plaintiff's illness progresses from being inherently undiscoverable to symptomatic to diagnosable.[4] Moreover, the value of requiring plaintiffs to bring a claim within a fixed period of time may be outweighed in some latent injury cases by "the inequity of depriving a reasonably diligent plaintiff of an opportunity to seek redress at all," [5] as well as the desirability of "deterring uneconomical anticipatory lawsuits." *Wilson*, 684 F.2d at 120.

While a diligent plaintiff who allegedly suffers from a latent injury or disease should be able to claim the benefit of the discovery rule, these causes raise questions about the correct formulation and application of that rule in latent occupational disease cases. The insidious nature of these diseases calls for the discovery rule to be defined and applied in a way that requires occupationally-exposed individuals to pursue their claims diligently, without forcing those who suffer no present impairment to file claims prematurely.

In its holdings below, the Eighth Court of Appeals established a new rule of law that expanded the discovery rule as applied in cases involving latent occupational diseases. In *Childs*, the court of appeals held that the discovery rule defers accrual of a cause of action based on a latent occupational disease

**4.** *See, e.g., Wilson v. Johns–Manville Sales Corp.*, 684 F.2d 111, 119 (D.C.Cir.1982)(Ginsburg, J.)("Evidence relating to [key issues to be litigated in a latent disease case] tends to develop, rather than disappear, as time passes."); *Larson*, 399 N.W.2d at 5–6 (noting that the evidentiary purpose of statutes of limitations is not implicated in latent disease cases); Green, *Paradox*, 76 Cal. L.Rev. 965, 970, 993–94 (1988)(providing several reasons why the overall quality of evidence in toxic substance cases improves over time); Shaw, *The Discovery Rule: Fairness in Toxic Tort Statutes of Limitations*, 33 CLEV. ST. L.REV. 491, 494 (1984–85)(explaining why the evidentiary purpose served by statutes of limitations does not apply in toxic tort cases); Note, *The Fairness and Constitutionality of Statutes of Limitations for Toxic Tort Suits*, 96 HARV. L.REV. 1683, 1685 (1983)("[T]he nature of toxic tort injuries often ensures that certain crucial evidence remains available even decades after the tortious event."); Glimcher, *Statutes of Limitations and the Discovery Rule in Latent Injury Claims: An Exception or the Law?*, 43 U. PITT. L.REV. 501, 514 (1982)("[I]n toxic substance claims the passage of time does not create problems of lost or inaccurate evidence."); Peters, *Occupational Carcinogenesis and Statutes of Limitation: Resolving Relevant Policy Goals*, 10 ENVTL. L. 113, 123 (1979)(arguing that "[o]f the traditional purposes for a statute of limitations, the evidentiary purpose is unduly harsh and unnecessary as applied to occupational carcinogenesis").

**5.** Glimcher, *Statutes of Limitations and the Discovery Rule in Latent Injury Claims: An Exception or the Law?*, 43 U. PITT. L.REV. 501, 514–15 (1982); *see also Wilson*, 684 F.2d at 117 (stating

that, in latent disease cases, the policy of repose is frequently outweighed by the interests of justice); *Harig*, 394 A.2d at 305 ("Avoiding possible injustice in cases [where the initial injury is inherently unknowable] outweighs the desire for repose and administrative expediency, which are the primary underpinnings of the limitations statute") (citations omitted); *Hansen*, 335 N.W.2d at 582 (concluding that "the injustice of barring meritorious claims before the claimant knows of the injury outweighs the threat of stale or fraudulent actions"); Green, *Paradox*, 76 Cal. L.Rev. 965, 1008–10 (1988)(discussing the "emptiness of repose" in the toxic substances arena); Shaw, *The Discovery Rule: Fairness in Toxic Tort Statutes of Limitations*, 33 CLEV. ST. L.REV. 491, 495 (1984–85)(explaining that a defendant's position in toxic substances cases differs from that of a defendant in a traditional tort case because "the latency of diseases caused by exposure has long been known"); *Accrual of Statutes of Limitations: California's Discovery Exception Swallows the Rule*, 68 Cal. L.Rev. 106, 119 (1980)("While there is an element of fairness in the notion that defendants should not be burdened forever by potential liability, this concern ... weakens when compared to the basic principle of justice that a remedy exists for every legal wrong diligently pursued."); Peters, *Occupational Carcinogenesis and Statutes of Limitation: Resolving Relevant Policy Goals*, 10 ENVTL. L. 113, 124 (1979)(arguing that "the personal certainty rationale [of statutes of limitations] is little justification for completely barring the injured employee's claim as against the one who caused the injury"); *but see* Epstein, *The Temporal Dimension in Tort Law*, 53 U. CHI. L. REV. 1175, 1216 (1986)(advocating a twenty-year statute of repose in latent injury cases).

until a reasonably diligent person would know what disease is causing his symptoms and that the injury is permanent. 935 S.W.2d at 935. In an opinion issued the same day, the court in *Martinez* fashioned a similar rule, holding that a cause of action does not accrue in a latent occupational disease case until a plaintiff "should reasonably have become aware of the permanent nature of his disease." 940 S.W.2d at 144. We disagree with these formulations of the discovery rule.

We have previously stated that the discovery rule operates to defer accrual of a cause of action until a plaintiff discovers or, through the exercise of reasonable care and diligence, should discover the "nature of his injury." *See, e.g., Trinity River Auth. v. URS Consultants, Inc.,* 889 S.W.2d 259, 262 (Tex.1994); *Moreno v. Sterling Drug, Inc.,* 787 S.W.2d 348, 351 (Tex.1990); *Weaver v. Witt,* 561 S.W.2d 792, 793–94 (Tex.1977). We recently explained that discovering the "nature of the injury" requires knowledge of the wrongful act and the resulting injury *See S.V.,* 933 S.W.2d at 4 (citing *Trinity River Auth.,* 889 S.W.2d at 262); *see also Glasscock v. Armstrong Cork Co.,* 946 F.2d 1085, 1092 (5th Cir.1991) (applying Texas law) (holding that plaintiff's cause of action accrued when he knew or should have known that his injuries resulted from exposure to asbestos); *Mann v. A.H. Robins Co., Inc.,* 741 F.2d 79, 80 (5th Cir.1984) (applying Texas law) (holding that a cause of action does not accrue until a plaintiff has knowledge of the cause in fact of her illness); *Bayou Bend Towers Council of Co–Owners v. Manhattan Constr.*

*Co.,* 866 S.W.2d 740, 743 (Tex.App.—Houston [14th Dist.] 1993, writ denied) (holding that discovery of an injury and its general cause commences limitations); *Alfaro v. Dow Chem.,* 751 S.W.2d 208, 209 (Tex.App.—Houston [1st Dist.] 1988), *aff'd,* 786 S.W.2d 674 (Tex.1990). Thus, when the discovery rule applies, accrual is tolled until a claimant discovers or in the exercise of reasonable diligence should have discovered the injury and that it was likely caused by the wrongful acts of another. But once these requirements are satisfied, limitations commences, even if the plaintiff does not know the exact identity of the wrongdoer. *See, e.g., Russell v. Ingersoll–Rand Co.,* 841 S.W.2d 343, 344 n. 3 (Tex.1992); *Moreno v. Sterling Drug, Inc.,* 787 S.W.2d 348, 351 (Tex.1990).

These principles apply equally in latent occupational disease cases. The characteristics described above that distinguish latent injuries from typical torts merely require us to further refine these well-established principles in the latent disease context to ensure they are applied in a way that is fair to plaintiffs and defendants, and promotes the efficient use of judicial resources. We therefore hold that the approach that best balances the interests implicated in latent occupational disease cases is one that defers accrual until a plaintiff's symptoms manifest themselves to a degree or for a duration that would put a reasonable person on notice that he or she suffers from some injury and he or she knows, or in the exercise of reasonable diligence should have known, that the injury is likely work-related.[6]

---

6. *See, e.g., Urie v. Thompson,* 337 U.S. 163, 170, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949)(holding that a plaintiff " 'can be held to be 'injured' [under the Federal Employers' Liability and Boiler Inspection Act] only when the accumulated effects of the deleterious substance manifest themselves . . . .' ")(quoting *Associated Indem. Corp.,* 12 P.2d at 1076); *Evenson v. Osmose Wood Preserving Co.,* 899 F.2d 701, 705 (7th Cir.1990)(applying Indiana law); *Maughan v. SW Servicing, Inc.,* 758 F.2d 1381, 1387 (10th Cir.1985)(holding that the plaintiff must be able to identify the "likely source" of his exposure to a particular carcinogen); *Fidler v. Eastman Kodak Co.,* 714 F.2d 192, 199 (1st Cir.1983)(applying Massachusetts law)(stating that "notice of likely cause is ordinarily enough to start the statute [of limitations] running"); *Karjala v. Johns–Manville Prods.*

*Corp.,* 523 F.2d 155, 160–61 (8th Cir.1975)(applying Minnesota law)(holding that "[i]t is when the disease manifests itself in a way which supplies some evidence of causal relationship to the manufactured product that the public interest in limiting the time for asserting a claim attaches and the statute of limitations will begin to run"); *Dawson v. Eli Lilly & Co.,* 543 F.Supp. 1330, 1334 (D.D.C.1982)(noting that a plaintiff need not have "clear and certain knowledge of a causal relationship before the statute [of limitations] begins to run"); *Copeland v. Armstrong Cork Co.,* 447 So.2d 922, 924 (Fla.Ct.App.1984), *aff'd in relevant part and quashed in part on other grounds sub nom. Celotex Corp. v. Copeland,* 471 So.2d 533 (Fla.1985); *see also* 2B LARSON, WORKMEN'S COMPENSATION LAW § 78.41(d), at 15–246 (1989)("[I]t is not necessary for the claimant to

Thus, in cases involving latent occupational diseases, "discovery of the injury" should not be equated with a plaintiff's discovery (1) of the precise name of the disease that is causing his symptoms or (2) that the disease is permanent. The seriousness of a personal injury need not be fully apparent or even fully developed in order to commence the statute of limitations.[7]

■ Our holding that a plaintiff need not know that an injury is a permanent condition before it can be deemed "discovered" will neither punish plaintiffs for their justified forbearance nor overburden defendants and courts by encouraging the filing of premature claims, for two reasons. First, accrual will always be deferred until a reasonably diligent plaintiff uncovers some evidence of a causal connection between the injury and the

plaintiff's occupation. Ordinarily, the symptoms of a latent occupational disease will be relatively serious and evident by the time this connection can be established with any degree of certainty. Second, when more than one, separate disease process results from a particular exposure, many courts have concluded that allowing the statute of limitations to run separately for each distinct disease benefits plaintiffs, defendants, and the judicial system by "deterring uneconomical anticipatory lawsuits."[8] Although the issue is not before us, we note that our formulation of the discovery rule for latent disease cases does not necessarily preclude a plaintiff from recovering damages for every disease that ultimately manifests itself as a result of the occupational exposure. For these reasons, imposing an additional "permanency" re-

know the exact diagnosis or medical name for his condition if he knows enough about its nature to realize that it is both serious and work-connected")(footnotes omitted).

7. *See Robertson v. Texas & N.O.R. Co.*, 122 S.W.2d 1098, 1099–1100 (Tex.Civ.App.—San Antonio 1938, writ ref'd); *American Med. Elecs., Inc. v. Korn*, 819 S.W.2d 573, 577 (Tex.App.—Dallas 1991, writ denied)("The limitations period begins to run as soon as the plaintiff discovers or should discover any harm, however slight, resulting from the negligence of the defendant."); *cf. Tennessee Gas Transmission Co. v. Fromme*, 153 Tex. 352, 269 S.W.2d 336, 337–38 (1954)(injury to real property); *accord Hutson v. Hartke*, 292 Ill.App.3d 411, 226 Ill.Dec. 951, 686 N.E.2d 734, 737 (1997)(holding that cause of action accrued not when plaintiff knew her bronchial tubes were permanently weakened, but rather when plaintiff "experienced an identifiable episode which irritated her nose and throat and started a pattern of coughing that subsequently worsened and continued for weeks"); *Yarbrough v. Louisiana Cement Co., Inc.*, 370 So.2d 602, 604 (La.Ct.App. 1979)(cause of action accrued for pulmonary difficulties arising from exposure to noxious chemicals even though plaintiff may not have known the precise effect the emissions had on him); *Olsen v. Bell Tel. Lab., Inc.*, 388 Mass. 171, 445 N.E.2d 609, 612 (1983)(rejecting plaintiff's argument that his claim accrued only when he knew the permanency of his condition); *Yardman v. Cooper*, 65 N.M. 450, 339 P.2d 473, 475–76 (1959)("The evidence shows that the plaintiff received an injury of sufficient gravity to cause any reasonable person to give notice to his employer.... The mere fact that he did know the full extent of his injury from a medical standpoint did not excuse him from filing his claim"); *see also* AMERICAN LAW OF PRODUCTS LIABILITY § 47:35 at

61–62 (3d ed.1987)(collecting cases); *but see Reasons v. Union Pac. R.R. Co.*, 886 S.W.2d 104, 109 (Mo.Ct.App.1994)(summary judgment was improper when circumstances were insufficient to put plaintiff on notice that his work environment was creating permanent damage); *cf. Schiele v. Hobart Corp.*, 284 Or. 483, 587 P.2d 1010, 1014 (1978)(holding that "[t]he statute of limitations begins to run when a reasonably prudent person associates his symptoms with a serious or permanent condition and at the same time perceives the role which the defendant has played in inducing that condition").

8. *See Wilson*, 684 F.2d at 120–21 (holding that "the diagnosis of 'mild asbestosis' ... did not start the clock on [plaintiff's] right to sue for the separate and distinct disease, mesothelioma, attributable to the same asbestos exposure, but not manifest until [five years later]"); *see also, e.g., Hagerty v. L & L Marine Serv., Inc.*, 788 F.2d 315, 320 (5th Cir.1986)(in toxic chemical or asbestos cases, "the disease of cancer should be treated as a separate cause of action for all purposes"); *Anderson v. Sybron Corp.*, 165 Ga.App. 566, 353 S.E.2d 816, 817 (1983)(motor-type disabilities followed by cataracts), *aff'd*, 251 Ga. 593, 310 S.E.2d 232 (1983); *Olsen v. Bell Tel. Labs., Inc.*, 388 Mass. 171, 445 N.E.2d 609, 612 (1983)(distinguishing a claim that relates to a single disease from one that involves successive, but distinct, injuries); *Potts v. Celotex Corp.*, 796 S.W.2d 678, 684–85 (Tenn.1990)(asbestosis followed by mesothelioma); *but see Gideon v. Johns–Manville Sales Corp.*, 761 F.2d 1129, 1137 (5th Cir.1985)(applying Texas law)(holding that the plaintiff "could not split his cause of action and recover damages for asbestosis, then later sue for damages caused by such other pulmonary disease as might develop, then still later sue for cancer should cancer appear").

quirement in our discovery rule jurisprudence is unwarranted.

The parties in these causes propose two opposing bright-line rules for determining under the discovery rule when a cause of action should accrue as a matter of law in a latent occupational disease case. Haussecker and Martinez argue that the statute of limitations does not begin to run until the plaintiff receives a confirmed medical diagnosis of a work-related illness. Childs and Humble, on the other hand, contend that a cause of action should be deemed to accrue as a matter of law when, as in these cases, a plaintiff files a worker's compensation claim or lawsuit alleging he suffers from an occupational injury. We reject both these proposed rules for the following reasons.

■ First, the accrual of a cause of action is not dependent on a confirmed medical diagnosis; a plaintiff whose condition has not yet been affirmatively diagnosed by a physician can have or, in the exercise of reasonable diligence could have, access to information that requires or would require a reasonable person to conclude he likely suffers from a work-related illness. *See, e.g., Vispisiano v. Ashland Chem. Co.,* 107 N.J. 416, 527 A.2d 66, 77 (1987) (noting that in a chemical exposure case, a physician's inclusion of chemical poisoning in the differential diagnosis would probably provide a plaintiff with sufficient information regarding the cause of his illness to trigger limitations).

But even if the plaintiff lacks such information, his or her cause of action will nevertheless accrue if the absence of due diligence is responsible for the deficiency. Thus, while a diagnosis of a latent occupational disease would be sufficient to start the limitations period, a final diagnosis is not always necessary before a cause of action can accrue. *See, e.g., Welch v. Celotex Corp.,* 951 F.2d 1235, 1237 (11th Cir.1992) (applying Georgia law); *Kullman v. Owens–Corning Fiberglas Corp.,* 943 F.2d 613, 616 (6th Cir.1991) (applying Michigan law); *Joseph v. Hess Oil Virgin Islands Corp.,* 671 F.Supp. 1043, 1048 (D.Vi.1987); *Hutson,* 226 Ill.Dec. 951, 686 N.E.2d at 737–38; *Bendix Corp. v. Stagg,* 486 A.2d 1150, 1151–53 (Del.1984); *Layton v. Watts Corp.,* 498 So.2d 23, 26 (La.Ct.App. 1986); *Sparks v. Metalcraft, Inc.,* 408 N.W.2d 347, 351–52 (Iowa 1987); *Schiele,* 587 P.2d at 1014; *Venham v. Astrolite Alloys,* 73 Ohio App.3d 90, 596 N.E.2d 585, 590 (1991); *see also* AMERICAN LAW OF PRODUCTS LIABILITY § 47:40, at 73 (3d ed.1987) (collecting cases).

■ Second, although several courts have adopted Childs' and Humble's position that the filing of a worker's compensation claim or lawsuit alleging that the plaintiff has an occupational injury begins the statute of limitations running as a matter of law,[9] we believe this rule, while not without some appeal, does not necessarily reflect accurately the plaintiff's knowledge in every case. Rather than

---

**9.** *See McDaniel v. Johns–Manville Sales Corp.,* 542 F.Supp. 716, 718 (N.D.Ill.1982)(holding that the plaintiffs' worker's compensation claims demonstrated an awareness as a matter of law both of injury and wrongful causation); *Coates v. Fibreboard Corp.,* 583 F.Supp. 504, 506–07 (M.D.La.1984)(holding that plaintiff's petition from a workmens' compensation suit established as a matter of law that plaintiff had actual knowledge of his disability and its cause); *Meeker v. American Torque Rod of Ohio, Inc.,* 79 Ohio App.3d 514, 607 N.E.2d 874, 877–78 (1992)(holding that plaintiff's workers' compensation claim alleging he had an occupational disease warranted summary judgment for defendants); *Ackler v. Raymark Indus., Inc.,* 380 Pa.Super. 183, 551 A.2d 291, 293 (1988)(appellant was previously successful in petitioning Workmen's Compensation Board for benefits; court noted that "it is not credible that the appellant did not know or have reason to know that he suffered from ... asbestosis ... when he signed

a detailed petition in which he swore or affirmed that he had asbestosis and scarring of his lungs"); *Price v. Johns–Manville Corp.,* 336 Pa.Super. 133, 485 A.2d 466, 468 (1984)(workman's compensation referee previously determined that plaintiff was entitled to disability compensation because he had partial disability from asbestos; held that plaintiff's claim accrued when he filed workers' compensation claim alleging he had an occupational disease); *cf. Terry v. Tyler Pipe Indus.,* 645 F.Supp. 1194, 1198 n. 9 (E.D.Tex.1986)(hinting that the date plaintiff filed a workers' compensation claim could be used as the accrual date); *Citizens State Bank of Dickinson v. Shapiro,* 575 S.W.2d 375, 385–86 (Tex.Civ.App.—Tyler 1978, writ ref'd n.r.e.)(holding that plaintiff discovered the defendant's alleged fraud and deceit as a matter of law when he filed an amended pleading in a prior divorce suit that contained a conspiracy allegation against the same defendants).

demonstrating what a plaintiff actually knows or should have known, an occupational injury claim or suit may be filed by an overly cautious plaintiff merely because of that layperson's unfounded suspicions or belief that an injury is related to a particular exposure. Claims based exclusively on such suspicions or beliefs do not justify the filing of a lawsuit. *See* Tex.R. Civ. P. 13. This being the case, a latent occupational disease cause of action should not be deemed to accrue absent some objective verification of a causal connection between injury and toxic exposure, provided that the failure to obtain that verification is not occasioned by a lack of due diligence. Accordingly, a diligent plaintiff's mere suspicion or subjective belief that a causal connection exists between his exposure and his symptoms is, standing alone, insufficient to establish accrual as a matter of law.[10]

▮▮▮▮▮▮ Requiring plaintiffs to file suit based only upon their suspicions about causal connections is also undesirable in latent occupational disease cases because, among other things, plaintiffs would be compelled to file premature, speculative claims. The ability of Texas courts and defendants to resolve claims involving serious injury or death would be diluted by the potentially over-

whelming number of suits filed by individuals who suffer no present impairment or who have no way of knowing or establishing that their impairment is likely work-related. *See* Green, *The Paradox of Statutes of Limitations in Toxic Substances Litigation,* 76 CALIF. L.REV. 965, 966 (1988) (noting that one of the most compelling problems posed by toxic substances litigation is "its voracious appetite for the civil justice system's resources"). Accordingly, we hold that a plaintiff's suspicions about the nature and cause of his or her injury, which may be evidenced by the filing of a worker's compensation claim or a lawsuit, represent an additional factor that, when considered with the other facts and circumstances presented by each case, could give rise to conflicting inferences about the plaintiff's knowledge of the injury and its likely cause. We also note, however, that a plaintiff's cause of action remains subject to the doctrines of res judicata and collateral estoppel; thus, the effect of a plaintiff's worker's compensation claim or lawsuit on a pending lawsuit is influenced by whether common issues of fact or common claims have been actually litigated or finally adjudicated in the former action. *See Coalition of Cities for Affordable Util. Rates v. Public*

---

10. *See Allen v. Roddis Lumber & Veneer Co.,* 796 S.W.2d 758, 760–61 (Tex.App.—Corpus Christi 1990, writ denied)(plaintiff's statement to doctor that she believed formaldehyde was making her sick was not conclusive proof she had discovered her injury); *accord, e.g., Welch v. Celotex Corp.,* 951 F.2d 1235, 1237 (11th Cir.1992)(applying Georgia law)(holding that filing of workers' compensation claim for asbestosis did not establish as a matter of law that plaintiff knew or had reason to know of the cause of his illness); *Knaps v. B & B Chem. Co.,* Inc., 828 F.2d 1138, 1140 (5th Cir.1987)(applying Louisiana law)(holding that plaintiff's suspicions about the cause of his injury were insufficient to begin limitations as a matter of law); *Maughan v. SW Servicing, Inc.,* 758 F.2d 1381, 1387 (10th Cir.1985)(applying Utah law)(noting that "[t]here is a substantive difference between knowledge of causation and mere suspicion"); *Hamilton v. Turner,* 377 A.2d 363, 364 (Del.Super.Ct.1977)(holding that plaintiff's suspicions about causation did not commence limitations as a matter of law); *Healy v. Owens–Corning Fiberglas,* 187 Ill.App.3d 182, 134 Ill.Dec. 827, 543 N.E.2d 110, 113–14 (1989)(same); *Baysinger v. Schmid Prods. Co.,* 307 Md. 361, 514 A.2d 1, 4 (1986)(plaintiff's mere suspicions concerning the cause of her infection were insufficient to com-

mence limitations as a matter of law); *Reasons v. Union Pac. R.R. Co.,* 886 S.W.2d 104, 108 (Mo.Ct.App.1994)(holding that "it is not enough to suspect a problem and a causal connection to start the statute of limitations ticking") *Biesterfeld v. Asbestos Corp. of Am.,* 467 N.W.2d 730, 737–39 (N.D.1991)(fact that plaintiff previously filed worker's compensation claim alleging he had asbestosis was merely one of several facts to be considered by the trier of fact); *Vispisiano,* 527 A.2d at 75 (holding that " 'suspicion' should not be taken as the touchstone for determining whether a plaintiff's cause of action accrues"); *Borello v. U.S. Oil Co.,* 130 Wis.2d 397, 388 N.W.2d 140, 146 (1986)(holding that subjective lay person's belief is not sufficient to trigger limitations); *see also* Pritikin, *Hanford: Where Traditional Common Law Fails,* 30 GONZ L.REV. 523, 571 (1995)(noting that "it does not necessarily follow that [the] subjective belief of causation [evidenced by the prior filing of a tort claim for a latent injury], standing alone, demonstrates that a claimant 'knew, or reasonably could have known, of his injury or damage and the cause thereof' "); *but see, e.g., Townley v. Norfolk & W. R.R. Co.,* 887 F.2d 498, 501 (4th Cir.1989)(holding that plaintiff's suspicions about his injury and its cause warranted summary judgment for defendant).

*Util. Comm'n,* 798 S.W.2d 560, 562–63 (Tex. 1990) (explaining when the doctrines of res judicata and collateral estoppel bar relitigation of claims or issues).

## III

■ We now apply the latent disease discovery rule principles articulated above to the facts of these silicosis cases. We can reverse the judgments of the court of appeals only if Childs and Humble have negated the discovery rule by establishing that no genuine issue of material fact exists concerning when Haussecker and Martinez experienced symptoms for a degree or for a duration that would have put a reasonable person on notice that he or she suffered from some injury and they discovered or, in the exercise of reasonable diligence should have discovered, the likely causal connection between their symptoms and their occupational exposure. *See Woods v. William M. Mercer, Inc.,* 769 S.W.2d 515, 518 n. 2 (Tex.1988) (citing *Weaver v. Witt,* 561 S.W.2d 792, 794 (Tex.1977) (explaining that the movant defendant bears the burden of negating the discovery rule at the summary judgment stage)). Inquiries involving the discovery rule usually entail questions for the trier of fact. *See, e.g., Strickland v. Johns–Manville Int'l Corp.,* 461 F.Supp. 215, 218 (S.D.Tex.1978) (applying Texas law); *Hassell v. Missouri Pac. R.R. Co.,* 880 S.W.2d 39, 44 (Tex.App.—Tyler 1994, writ denied); *accord, e.g., Sawtell v. E.I. Du Pont De Nemours & Co., Inc.,* 22 F.3d 248, 252 (10th Cir.1994) (applying New Mexico law); *Maughan v. SW Servicing, Inc.,* 758 F.2d 1381, 1387–88 (10th Cir.1985) (applying Utah law) (collecting federal cases); *Van Buskirk v. Carey Canadian Mines, LTD.,* 760 F.2d 481, 498 (3d. Cir.1985); *Saunders v. Klungboonkrong,* 150 Ill.App.3d 56, 103 Ill.Dec. 565, 501 N.E.2d 882, 886 (1986); *Wyatt v. A–Best Co., Inc.,* 910 S.W.2d 851, 854 (Tenn.1995). However, the commencement of the limitations period may be determined as a matter of law if reasonable minds could not differ about the conclusion to be drawn from the facts in the record. *See, e.g., Commercial Standard Ins. Co. v. Davis,* 134 Tex. 487, 137 S.W.2d 1, 2 (1940). In conducting our review, all evidence favorable to Haussecker and Martinez must be taken as true, and all reasonable inferences and doubts must be resolved in their favor. *See, e.g., Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–549 (Tex.1985).

### Childs v. Haussecker

■ Childs argues that he is not liable to the Hausseckers for legal malpractice because he gave them correct legal advice when he told them in April 1990 that their claims were barred by the applicable two-year statute of limitations for personal injury claims. Thus, the question in this cause is whether before April 1988 Haussecker knew or should have known in the exercise of reasonable diligence that he likely suffered from an occupational illness.

According to Childs, Haussecker's claims for silicosis accrued no later than 1968, when he filed his compensation claim, or, at the latest, when he brought suit for compensation alleging that he had silicosis. Haussecker, on the other hand, contends that, under the discovery rule exception, the cause of action did not accrue until April 3, 1990, the date he was diagnosed with silicosis. For the reasons articulated above, neither of these dates establishes, as a matter of law, the date on which Haussecker discovered or should have discovered that he had an injury that was likely caused by his exposure to a hazardous substance in the work place.

Haussecker certainly knew he was injured long before April 1988. In 1963, he complained about spitting up blood. He experienced respiratory problems beginning in 1967, and sought medical treatment for those problems from several doctors. One of those doctors informed him that something was seriously wrong, and another diagnosed his condition as granuloma. By 1978, Haussecker's health had deteriorated so much that he ceased working altogether, and his health problems continued over the next ten years. Thus, although Haussecker may not have known the precise nature of his injury before receiving a confirmed diagnosis in 1990, his prolonged and progressively debilitating symptoms clearly informed him that he suffered a relatively serious injury well before 1988. *Cf. Terry v. Tyler Pipe Indus.,* 645

F.Supp. 1194, 1195, 1197 (E.D.Tex.1986) (holding that plaintiff knew he was injured when he was forced to seek medical attention due to a severe cough).

The date that Haussecker connected or reasonably should have connected his ongoing symptoms to his work at AMF, however, is not so clear. Once Haussecker began having respiratory problems, he attempted to ascertain the cause of his health problems in a reasonably diligent manner by consulting many doctors. During the course of these consultations, several facts came to light that could indicate that Haussecker knew or should have known about the likely cause of his sickness before April 1988. For example, as early as the 1960s, Haussecker suspected he had an occupational illness because several of his co-workers had respiratory health problems similar to his, including one co-worker who had died of silicosis. That Haussecker filed a workers' compensation suit in 1968 specifically alleging he had silicosis further serves to confirm the suspicions he harbored. Also in 1968, one of Haussecker's doctors advised him not to return to work at AMF.

■ But other important facts could cause reasonable minds to differ about what Haussecker should have known about his symptoms by 1988. First, and most importantly, several doctors, including a lung specialist, dispelled Haussecker's suspicions by telling him in 1968 that his symptoms were not work-related. Instead, Haussecker was told that he possibly had prostate troubles, lymphoma, or Hodgkin's disease. When medical experts consistently reject a layperson's suspicions concerning the cause of symptoms by expressly refuting an occupational connection or by suggesting exclusively causes that are not work-related, a fact question ordinarily arises about what reasonably should be known by the plaintiff and what further action the plaintiff should have taken, even if the plaintiff knows that co-workers suffer from similar symptoms.[11] Second,

---

**11.** *See, e.g., Knaps v. B & B Chem. Co., Inc.,* 828 F.2d 1138, 1140 (5th Cir.1987)(applying Louisiana law)(plaintiff believed that his skin disorder was caused by the soap he was required to use at work, but none of the doctors he consulted would acknowledge a causal connection; held that plaintiff's delay in filing action may have been reasonable); *Helinski v. Appleton Papers,* 952 F.Supp. 266, 271–72 (D.Md.1997)(holding that cause of action did not accrue as a matter of law when plaintiff suspected that her symptoms were caused by carbonless copy paper because the doctors with whom she consulted gave her contradictory and inconclusive diagnoses); *Raymond v. Eli Lilly & Co.,* 412 F.Supp. 1392, 1402 (D.N.H.1976)(finding that "the unanimity of ignorance expressed to [plaintiff] by her various physicians could only serve to impress upon her the unavailability of any medical explanation for her difficulties"); *Nelson v. Industrial Comm'n,* 120 Ariz. 278, 585 P.2d 887, 891 (1978)(stating that a workers' compensation claimant "cannot be held to a higher standard of diligence than the physicians treating him in discovering the relationship of his condition to his employment"); *Copeland v. Armstrong Cork Co.,* 447 So.2d 922, 924, 927–28 (Fla.Dist.Ct.App.1984)(before plaintiff who coughed up blood while working around asbestos could obtain a confirmed diagnosis of asbestosis, two doctors diagnosed plaintiff's condition as emphysema and one of those doctors advised plaintiff to change jobs to avoid asbestos dust; held genuine issues of material fact about when cause of action accrued precluded summary judgment), *aff'd in relevant part and quashed in part sub. nom., Celotex Corp. v. Cope-*

land, 471 So.2d 533 (Fla.1985); *Nolan v. Johns–Manville Asbestos,* 85 Ill.2d 161, 52 Ill.Dec. 1, 421 N.E.2d 864, 865–69 (1981)(although plaintiff had read information describing the relationship between exposure to asbestos materials and lung problems, none of the doctors plaintiff initially consulted about his progressively worsening symptoms indicated any causal connection between his condition and his occupation; held that fact question existed about when plaintiff would have had sufficient information to make causal connection); *Healy v. Owens–Corning Fiberglas,* 187 Ill.App.3d 182, 134 Ill.Dec. 827, 543 N.E.2d 110, 113–15 (1989)(plaintiff suspected his lung injuries were possibly caused by asbestos exposure and knew that two of his co-workers had died of asbestos-related diseases, but two doctors communicated their uncertainty about the cause of his symptoms; held that there was conflicting evidence about when plaintiff knew or reasonably should have known that his lung condition was related to occupational exposure); *Baysinger v. Schmid Prods. Co.,* 307 Md. 361, 514 A.2d 1, 4 (1986)(although plaintiff was suspicious that her intrauterine device caused her injuries, her doctors informed her they were not aware of the cause; held that reasonable minds could differ about whether a reasonably diligent person would have conducted a further investigation); *Vispisiano,* 527 A.2d at 68–70, 77 (plaintiff suspected chemical exposure at work caused his symptoms and he spoke with a co-worker who had similar health problems, but several doctors were either unable to determine etiology or suggested that the symptoms were not work-related; held that defendants were not entitled to sum-

Haussecker's workers' compensation claim and lawsuit were abandoned precisely because there was no evidence to support his contention that he had an occupational disease. And because Haussecker abandoned these claims, the doctrines of res judicata and collateral estoppel do not bar retrial. Finally, we note that Childs offered no evidence about whether Haussecker stopped consulting doctors about his deteriorating health from 1978 to 1988 or whether Haussecker could have been diagnosed with an occupational illness during that time period.

On the present record, a fact question exists not only about the knowledge that should be attributed to Haussecker as of April 1988, but also about whether Haussecker reasonably abandoned pursuing his suspicions that his respiratory problems were work-related from 1978 until 1988 when a doctor for the first time suggested that he might have silicosis. In sum, because reasonable minds could differ about when Haussecker knew or should have known through the exercise of reasonable diligence about a likely causal connection between his symptoms and his occupational exposure, Childs was not entitled to judgment as a matter of law on limitations.

Our conclusion rests exclusively on limitations grounds as presented by this summary judgment record, for that is the sole issue before us. We express no opinion about the merits of the underlying legal malpractice claim.

### Martinez v. Humble Sand & Gravel

Martinez sued the various defendants on August 13, 1992, alleging that he contracted silicosis while working as a sandblaster. Thus, under the applicable two-year statute of limitations, we must determine whether Martinez knew or should have known through the exercise of reasonable diligence about his injury and that it was likely work-related before August 13, 1990.

Humble argues that Martinez's cause of action accrued in September 1989 when: (1) he was experiencing respiratory problems; (2) he knew he had been exposed to silica; (3) he knew that his brother, who was also a sandblaster, had silicosis and that his brother's illness was caused by breathing occupational dust; and (4) he asserted a worker's compensation claim alleging that he had a lung disease that first manifested itself on August 31, 1989. Martinez responds that September 1989 is not the proper date of accrual because a silicosis claim had no medical basis at that time, and he filed the claim only because he feared he must do so to avoid being time barred. Martinez proposes that the proper accrual date is September 23, 1991, when a doctor confirmed he had silicosis.

Like Haussecker, Martinez suffered an injury more than two years before filing suit. In 1989, Martinez experienced shortness of breath and other respiratory problems that he associated with his work as a sandblaster. He also filed a workers' compensation claim that year alleging he had a lung disease that first manifested itself on August 31, 1989. According to Martinez, he applied for benefits as a precaution because he thought he might have the same illness as his brother, which he knew to be silicosis, and which he knew was caused by breathing occupational dust.

mary judgment absent reasonable medical support for plaintiff's suspicions); *Graves v. Church & Dwight Co., Inc.*, 225 N.J.Super. 49, 541 A.2d 725, 728–29 (1988)(plaintiff suspected that sodium bicarbonate caused his abdominal problems, but several physicians either did not make this connection or affirmatively disagreed; held that summary judgment for defendant was improper), *aff'd per curiam*, 115 N.J. 256, 558 A.2d 463 (1989); *see also* 2B LARSON, WORKMEN'S COMPENSATION LAW § 78.41(d, f), at 15–252, 15–259–261 (1989); *but cf. Vaught v. Showa Denko K.K.*, 107 F.3d 1137, 1139–1142 (5th Cir.1997)(applying Texas law)(after reading a newspaper article describing the symptoms of eosinophilia myalgia syndrome and its link to the ingestion of L-tryptophan, plaintiff believed she might have EMS because she had similar symptoms and had taken L-tryptophan; relying on a Texas court of appeals case in which the plaintiff suspected she had EMS due to L-tryptophan and was told by doctors she might have EMS, the court held that limitations commenced as a matter of law when plaintiff believed she contracted EMS from the ingestion of L-tryptophan, even though several doctors refuted her suspicions and diagnosed her with fibrositis, reasoning that "there is no exception under Texas law for those who make a diligent inquiry but fail to obtain a positive diagnosis").

█ The discovery rule, however, expressly requires a plaintiff to use reasonable diligence to investigate his injury. *See, e.g., S.V.,* 933 S.W.2d at 4; *Willis v. Maverick,* 760 S.W.2d 642, 644 (Tex.1988); *Bell v. Showa Denko K.K.,* 899 S.W.2d 749, 754 (Tex. App.—Amarillo 1995, writ denied). Despite this directive, Martinez did not diligently seek medical advice about the nature of his injury and the potential causes. For example, he did not consult a doctor until September 1990, approximately a year after his breathing problems first appeared, even though he had filed a worker's compensation claim in September 1989 alleging he had a lung injury, and knew as early as 1985 that his brother, also a sandblaster, suffered from silicosis that was caused by inhaling occupational dust. Under these circumstances, a reasonably diligent person would have gone to a doctor about his suspected injuries in September 1989 or soon after. Consequently, Martinez should have sought medical advice diligently rather than sit idly for almost a year.[12]

Martinez contends that his delay in seeking medical treatment was reasonable because he could not afford to visit a doctor until September 1990. However, we need not decide what affect Martinez's financial status would have on the tolling of accrual, if any, because the evidence in the record of Martinez's financial difficulties dates from when Martinez ceased working altogether sometime after March 1992. The record is bare of any evidence supporting Martinez's contention that he could not afford to pay for a doctor on his own before September 1990.

█ Although the record reveals that Martinez failed to exercise reasonable diligence once he was apprised of facts that would incite a reasonably diligent person to seek information about his or her injuries and their likely causes, his claim is not time-barred as a matter of law. Humble Sand & Gravel did not offer any summary judgment evidence that a diligent investigation would have led Martinez to discover before August 13, 1990, that he suffered from an occupational illness. Consequently, a fact question remains with respect to whether Martinez knew or should have known through the exercise of reasonable diligence that his injury was likely work-related before August 13, 1990.

## IV

Accordingly, we affirm the judgment of the courts of appeals in both *Haussecker v. Childs* and *Martinez v. Humble Sand & Gravel.*

HECHT, Justice, filed a dissenting opinion, in which GONZALEZ and OWEN, Justices, joined.

---

12. *See Sowell v. Dresser Indus., Inc.,* 866 S.W.2d 803, 806 (Tex.App.—Beaumont 1993, writ denied)(reasoning that plaintiff failed to act diligently as a matter of law because "[e]ven if there was a mere possibility of tuberculosis, [plaintiff] had a *duty to use ordinary care to either confirm* or exclude that malady"); *accord, e.g., Grimm v. Ford Motor Co.,* 157 Mich.App. 633, 403 N.W.2d 482, 485 (1986)(noting that even if discovery rule had applied, claim would have been time-barred because, despite plaintiff's suspicions, he did not diligently investigate his claim in a timely fashion); *Johnson v. Norfolk & W. Ry. Co.,* 836 S.W.2d 83, 86–87 (Mo.Ct.App.1992)(affirming summary judgment for defendant because plaintiff failed to investigate diligently the potential cause of his hearing loss symptoms that he suspected might be work-related); *Cochran v. GAF Corp.,* 542 Pa. 210, 666 A.2d 245, 249–50 (1995)(holding that plaintiff did not exercise reasonable diligence as a matter of law because he did not seek medical help to ascertain the cause of his illness until four years after discovering the illness); *Baumgart v. Keene Bldg. Prods. Corp.,* 542 Pa. 194, 666 A.2d 238, 244 (1995)("Reasonable diligence is just that, a reasonable effort to discover the cause of an injury under the facts and circumstances present in the case."); *Ingenito v. AC & S, Inc.,* 430 Pa.Super. 129, 633 A.2d 1172, 1182 (1993)(Elliott, J., dissenting)(noting that "[t]he duty of due diligence includes within its meaning the duty to investigate one's suspicions"); *cf. Bayou Bend Towers Council of Co-Owners v. Manhattan Constr. Co.,* 866 S.W.2d 740, 744 (Tex.App.—Houston [14th Dist.] 1993, writ denied)(holding that plaintiff was "under a duty to undertake further inquiry to discover the nature of the damage it suffered" when its consultant advised it to undertake additional investigation); *but cf. White v. Owens–Corning Fiberglas Corp.,* 447 Pa.Super. 5, 668 A.2d 136, 146 (1995)(appellant suffered from shortness of breath, but harbored no suspicion and had no evidence that his condition was work-related; held that mere shortness of breath was insufficient as a matter of law to invoke the duty of due diligence to investigate whether plaintiff had asbestosis).

HECHT, Justice, joined by GONZALEZ and OWEN, Justices, dissenting.

Illustrating how words can be taken to mean many different things, and therefore almost nothing, the Court holds that a person can allege in a lawsuit and testify under oath that he has a latent occupational disease, and later contend that he did not really know whether he had the disease or not. His pleadings and averments of injury are, according to the Court, only a "factor that, when considered with the other facts and circumstances presented by each case, could give rise to conflicting inferences about the plaintiff's knowledge of [his] injury and its likely cause."[1] It takes a very loose logic to infer that a person does not know if he has been injured from his assertion, "I have been injured." It may be true, of course, that he does not know, but it is awfully hard to infer that fact from the contrary assertion.

Latent diseases, because they are latent, often evade detection. A person may suspect that he has a latent disease like silicosis long before his fears can be confirmed. His cause of action for having been exposed to disease-causing agents should not accrue with his first suspicions, but only when he knows or reasonably should know that he has the disease. But when a person files suit alleging that he knows he is diseased, claiming damages against another who must appear and defend against those allegations, he should at least be taken at his word and not be heard to argue later that he did not really know if his allegations were true. From the Court's contrary conclusion I respectfully dissent.

Joseph Haussecker's case is sympathetic. For nearly a year after his first respiratory problems, he diligently sought medical treatment. None of the three physicians who treated him diagnosed work-related silicosis. Nevertheless, Haussecker was convinced that his medical problems were due to his having worked around silica dust, sand, and toxic fumes, in part because many of his co-workers had suffered the same problems. So he filed a claim for worker's compensation benefits, and after the Industrial Accident Board denied the claim, Haussecker filed suit. In that lawsuit Haussecker alleged that he had contracted a disease while at work. Asked at his deposition about the cause of his problems, Haussecker testified as follows:

A Well, I always thought it was work-related.

Q Even as early as September, 1967?

A And I've got a good reason for that, too.

Q Well—

A To believe that.

Q To believe that it was work-related?

A Yeah.

\* \* \*

Q You say that you have good reason to believe that it is work-connected. Would you be kind enough to tell us that reason that you think it is work-connected?

A Yes.

Q Please do so.

A Six years—six and a half years I've worked down there, we've had eight men with lung trouble.

Q Do you know their names?

A I know some of them.

Q Could you give us those names.

A Yes.

Haussecker then named six co-workers. But despite his reasoned belief that his disease was work-related, Haussecker could not obtain confirmation by medical diagnosis. His suit pended four years and then was dismissed for want of prosecution. Sixteen years later, a physician diagnosed Haussecker with silicosis. The attorney who had represented Haussecker in his compensation case advised him that it was too late to reopen his claim. Two years later Haussecker brought this action against his attorney, alleging that his advice was faulty.

Jose Martinez was not as diligent as Haussecker in seeking medical care. He did not consult a physician for a year after he filed a claim for worker's compensation. The physician recommended a biopsy, but Martinez waited another year before having the procedure. Three years after filing his compensa-

---

1. *Ante* at 43.

tion claim, which still pends, Martinez brought this action against several manufacturers and suppliers of sandblasting equipment for products liability, negligence, breach of warranty, and conspiracy.

Haussecker and Martinez each suffered an adverse summary judgment on the grounds that the claims for work-related injuries were barred by limitations. Defendants in both cases argue that although a cause of action for a latent occupational disease like silicosis does not accrue until the plaintiff knew or reasonably should have known of the injury, that date is established when the plaintiff files suit alleging a work-related disease, as Haussecker and Martinez both did in their compensation actions. The Court acknowledges that defendants' argument is "not without some appeal",[2] having been adopted by several courts,[3] but rejects it because "an occupational injury claim or suit may be filed by an overly cautious plaintiff merely because of that layperson's unfounded suspicions or belief that an injury is related to a particular exposure."[4] The explanation does not fit either of the present cases. Haussecker does not claim to have filed his compensation claim merely because of unfounded suspicions of injury. On the contrary, Haussecker explained the basis of his claim in his deposition, and he contends now, as he did then, that he was correct. Martinez claims he filed his compensation claim merely as a precaution, but that is belied by his assertion that he filed the claim because of his brother's similar work-related problems.

But it is the Court's rule, and not merely its application in the present cases, that is flawed. The rule excuses the filing of baseless lawsuits, despite Chapter 10 of the Civil Practice and Remedies Code, which authorizes sanctions for filing a lawsuit in which any factual allegation lacks evidentiary support,[5] and Rule 13 of the Rules of Civil Procedure, which requires sanctions for filing a suit without factual basis.[6] Consistent with these requirements, the Court should "pre-

sume that pleadings ... are filed in good faith",[7] not that pleadings are often filed on "unfounded suspicions". Instead, the Court's rule accepts that baseless lawsuits will be filed, and that they should not mean much.

The Court appears to reason that if a plaintiff is not held to his allegations in a case, he will be less inclined to file suit without good grounds as a mere precautionary matter to preserve his claims. But it seems to me the opposite is true. By holding that a plaintiff's allegations in a lawsuit are merely a factor to be considered in deciding whether he knew or should have known they were true, the Court promotes, not discourages, the filing of baseless claims. The plaintiff has nothing to lose: if he does not prevail, he may not be foreclosed from making the same claims later. On the other hand, if a plaintiff were to be bound by his allegations in a suit, he would have to think twice about filing it. While I agree with the Court that groundless litigation should be discouraged, I do not think the Court's rule accomplishes that purpose.

Thus, I would hold that Haussecker's and Martinez's claims are barred because they knew or should have known, when they filed their compensation claims, that their allegations in those claims were true—that is, that they suffered from work-related illnesses. I do not disagree with the application of the discovery rule to latent occupational diseases like silicosis, but I have reservations about several important parts of the Court's opinion. Although I do not join in the result the Court reaches, I offer three other observations on the Court's opinion.

First, the Court argues that it is fair and equitable to apply the discovery rule to latent occupational disease claims, and it is, but that is not why the rule applies to such claims or to any others. The rule applies when both prerequisites for its invocation are satisfied—which are, that "the nature of the injury

---

**2.** *Ante* at 42.

**3.** *Ante* at 42 n. 9.

**4.** *Ante* at 43.

**5.** TEX. CIV. PRAC. & REM.CODE §§ 10.001(3), 10.004(a).

**6.** TEX.R. CIV. P. 13.

**7.** *Id.*

incurred is inherently undiscoverable and the evidence of injury is objectively verifiable"[8] —absent conflicting legislative policies.[9] Our opinions in *Computer Associates International, Inc. v. Altai, Inc.*[10] and *S.V. v. R.V.*[11] were intended to make application of the discovery rule a more objective issue. The conflict between the policy of prohibiting stale claims and the policy of providing a plaintiff sufficient opportunity to assert a claim are balanced in the *Altai/S.V.* prerequisites for applying the discovery rule. As we explained in *S.V.*:

> [F]or the discovery rule to apply a plaintiff's claim must be inherently undiscoverable and objectively verifiable. The concern that meritorious claims will be barred is already taken into account in fashioning these two elements. The two elements strike the proper balance between the beneficial purposes of statutes of limitations and the real concern that a person's rights may be cut off. To reweigh this concern, which is of course a legitimate one, against the very balance it has produced would be to make it the determinative factor. As we stated in [*Robinson v. Weaver*[12]], the "preclusion of a legal remedy alone is not enough to justify a judicial exception to the statute. The primary purpose of limitations, to prevent litigation of stale or fraudulent claims, must be kept in mind." Allowing late-filed claims that are inherently undiscoverable while requiring objectively verifiable injury reduces the likelihood of injustice in cutting off valid claims while affording some protection against stale and fraudulent claims.[13]

A disease that is latent is by its very definition inherently undiscoverable. The wrongful exposure to a substance that results in an occupational disease like silicosis is objectively verifiable because the opportunity for exposure can be isolated to the workplace. If this were not so, objective verifiability would present a greater problem. The issue is not, of course, whether the presence of the disease is objectively verifiable; when the disease manifests itself, it is obviously objectively verifiable. Rather, the issue is whether the wrongful exposure is objectively verifiable. In many occupational disease cases it is.

Second, I agree with the Court that symptoms will put a person on notice that he or she has contracted a disease, but other circumstances may do the same. For example, a person may know that he or she has been exposed to radiation at such a level as to cause injury some time before symptoms manifest themselves. A cause of action for exposure to a disease-causing agent certainly accrues no later than the onset of serious symptoms, but I do not read the Court's statement of the discovery rule to delay accrual in every situation until symptoms manifest themselves.

Finally, the Court's observation that evidence of latent disease often "improves with the passage of time because the state of scientific knowledge becomes more sophisticated"[14] suggests that the discovery rule might defer accrual of a cause of action while scientific knowledge is improving, even if decades passed before science recognized that injury had occurred. Such eventualities are better addressed by statutes of repose than by limitations and the discovery rule.[15]

8. *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex.1996); *S.V. v. R.V.*, 933 S.W.2d 1, 6 (Tex.1996).

9. *Little v. Smith*, 943 S.W.2d 414, 422 (Tex.1997) ("In the case before us today, clear legislative policies bear directly on whether the discovery rule should be applied. When the Legislature has implemented statutory schemes that inform our decision, we should be guided by the Legislature's determinations of the weight to be given competing interests.")

10. 918 S.W.2d 453 (Tex.1996).

11. 933 S.W.2d 1 (Tex.1996).

12. 550 S.W.2d 18, 20 (Tex.1977).

13. *S.V.*, 933 S.W.2d at 15.

14. *Ante* at 39.

15. *E.g.*, Tex. Civ. Prac. & Rem Code §§ 16.008 (ten-year statute of repose in cases involving architects and engineers), 16.009 (ten-year statute of repose, generally, in cases involving contractors), 16.011 (ten-year statute of repose in cases involving surveyors), and 16.012 (fifteen-year statute of repose, generally, in products liability cases).

But in the absence of a statutory solution, I do not take the Court's observation to suggest that the discovery rule would necessarily defer accrual of a cause of action for many years while scientific knowledge was improving.

Haussecker and Martinez each alleged that they knew more than two years before asserting their claims in the present cases that they had been injured on the job. I would hold that they are bound by those allegations, and that their current claims are barred by limitations. Accordingly, I respectfully dissent.