Reversed and Remanded and Majority and Dissenting Opinions filed
February 19, 2004









Reversed and Remanded and Majority and Dissenting Opinions filed February
19, 2004.       

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-02-00638-CV

____________

 

ROGER DIXON, Appellant

 

V.

 

E.D. BULLARD
COMPANY AND LONE STAR INDUSTRIES, INC., Appellees

 



 

On Appeal from the 129th
District Court

Harris County, Texas

Trial Court Cause No. 00-12363

 



 

M A J O R I T Y   O P I N I O N








Appellant Roger Dixon asks this court to
reverse a summary judgment granted in favor of appellees E. D. Bullard Company
and Lone Star Industries, Inc. on his personal injury claims arising out of
exposure to silica during his employment as a sandblaster.  In two issues presented, Dixon complains that
(1) the trial court abused its discretion by denying Dixon=s motion to strike
appellees= summary judgment evidence filed less than
twenty-one days before the hearing on appellees= motion for
summary judgment and by considering the late-filed evidence; and (2) summary
judgment was improperly granted on the basis of the applicable statute of
limitations because there are fact questions as to when Dixon knew or should
have known of his occupation-related lung disease.  We agree summary judgment was improper and
reverse and remand.

Procedural and Factual Background

Dixon filed this lawsuit on March 8, 2000,
asserting causes of action against several defendants for strict liability,
negligence, and breach of express and implied warranties and seeking exemplary
damages.  Dixon alleged he suffers from
silicosis due to exposure to silica during his employment as a
sandblaster.  Dixon did not specifically
plead the discovery rule in his original petition, but in his factual
statement, he said he suffered personal injuries as a result of working as a
sandblaster from 1971 to 1985.

On February 21, 2002, appellees filed a
joint motion for summary judgment based upon the affirmative defense of
limitations.  In that motion, appellees
conceded the application of the discovery rule to Dixon=s claims.  Dixon filed his response to the motion on
March 11.  Appellees filed a joint reply
on March 15, which contained summary-judgment evidence not submitted to the
court with appellees= joint motion.  Appellees did not file a motion for leave to
file additional summary-judgment evidence. 
Also on March 15, Dixon filed Plaintiff=s Fourth Amended
Petition in which he pleaded the application of the discovery rule.  On March 18, Dixon filed a motion to strike
the joint reply to which appellees did not respond.  A hearing was held on the summary-judgment
motion that same day.  The trial court
granted the motion for summary judgment and denied Dixon=s motion to
strike.  Dixon timely filed a motion to
reconsider and a motion for new trial, and the motions were overruled by
operation of law on July 3.

Analysis

A.      Late-filed summary judgment evidence was
not considered by the trial court. 








In his first issue, Dixon complains that
the trial court should have granted his motion to strike and that it improperly
considered appellees= late-filed summary judgment
evidence.  Appellees contend that they
were first put on notice that Dixon was asserting the discovery rule by his
inclusion of certain medical records as part of his evidence filed in his
response to the motion for summary judgment. 
Appellees contend that Dixon did not plead the discovery rule until
March 15, the last business day before the hearing on appellee=s motion for
summary judgment.  Appellees also assert
that Dixon did not file a motion for continuance or request leave of the trial
court to supplement the record after the trial court denied Dixon=s motion to
strike, and thus waived the right to complain that he was deprived of a right
to respond to appellees= late-filed evidence.








Rule 166a of the Texas Rules of Civil
Procedure sets forth the deadlines for the filing of a motion for summary
judgment and supporting evidence and for the filing of a response and
supporting evidence.  See Tex. R. Civ. P. 166a(c).  The motion and any supporting affidavits
shall be filed and served at least twenty-one days before the hearing
date.  See id.  The nonmovant may file a response and
opposing affidavits not less than seven days prior to the hearing date.  See id.  Rule 166a does not specify when a reply to a
nonmovant=s response must be filed.  See, e.g., Alaniz v. Hoyt, 105 S.W.3d
330, 339 (Tex. App.CCorpus Christi 2003, no pet.) (stating
that A[r]ule 166a(c)
does not specify the time within which a movant=s reply to a
[nonmovant=s] response must be filed,@ but holding that
nonmovant=s failure to object to evidence submitted
in reply to response waived any complaint on appeal as to trial court=s consideration of
evidence attached to reply brief).  Nonetheless,
summary judgment evidence must be filed at least twenty-one days before the
hearing date with only one exception.  ASummary judgment
evidence may be filed late, but only with leave of court.@  Benchmark Bank v. Crowder, 919 S.W.2d
657, 663 (Tex. 1996).  Where nothing
appears of record to indicate that late filing of summary judgment evidence was
with leave of court, it is presumed that the trial court did not consider
it.  See id. (citing INA of
Texas v. Bryant, 686 S.W.2d 614, 615 (Tex. 1985)); Texas Airfinance
Corp. v. Lesikar, 777 S.W.2d 559, 561 (Tex. App.CHouston [14th
Dist.] 1989, no writ) (stating that appellate court must presume trial court
did not consider summary judgment movant=s supplemental
affidavit filed twelve days before order granting summary judgment was signed
because affidavit was not timely filed and nothing in record indicated trial
court granted leave to file); see also Balderrama v. City of Castroville,
No. 04-03-00035-CV, 2003 WL 22047627, at *1 (Tex. App.CSan Antonio Sept.
3, 2003, no pet.) (not designated for publication) (ABecause the record
does not indicate the trial court granted the City permission to late-file Ms.
Quirk=s amended
affidavit and because the City does not dispute appellants= assertion that no
such permission was given, the amended affidavit was not properly before the
trial court and we assume it was not considered by the court for summary
judgment purposes.@) (citations omitted).

In this case, appellees did not file a
motion for leave to file additional summary judgment evidence, and there is
nothing in the record reflecting that the trial court granted leave.[1]  Most of the evidence submitted by appellees
as part of their reply was new evidence. 
Applying the rule stated in Benchmark leads us to conclude the
evidence submitted by appellees with their reply brief less than twenty-one
days before the hearing was untimely filed, and we must presume the trial court
did not consider it.  Accordingly, we
overrule Dixon=s first issue, and therefore decide
whether summary judgment was proper based only on the evidence timely submitted
by both parties.[2]








B.      Summary
judgment was improper because there is a fact question as to when Dixon knew or
should have known he had a work-related disease. 

Appellees filed a traditional motion for
summary judgment, and therefore had the burden to show that no genuine issue of
material fact exists and that they are entitled to judgment as a matter of
law.  Tex.
R. App. P. 166a(c); Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546,
548 (Tex. 1985).  As defendants, they
must conclusively negate at least one essential element of each of Dixon=s causes of action
or conclusively establish each element of an affirmative defense.  Science Spectrum, Inc. v. Martinez,
941 S.W.2d 910, 911 (Tex. 1997).  The
appellees= motion rested solely on their affirmative
defense of limitations.  As movants,
appellees bore the burden of establishing the absence of genuine issues of
material fact regarding when Dixon knew or should have known of his injuries.  See Woods v. William M. Mercer, Inc.,
769 S.W.2d 515, 518 n.2 (Tex. 1998) (AThus, in a summary
judgment setting, the burden rests upon the movant defendant not only to plead
limitations, but also to negate the discovery rule.@).  In deciding whether a disputed material fact
issue exists precluding summary judgment on appellees= affirmative
defense, we resolve every reasonable inference in favor of Dixon and take all
evidence favorable to him as true.  See
Science Spectrum, 941 S.W.2d at 911.








A plaintiff must commence a lawsuit for
personal injuries within two years after the day the cause of action
accrues.  See Tex. Civ. Prac. & Rem. Code Ann. ' 16.003(a) (Vernon
2002).  Because section 16.003(a) does
not define the accrual date, courts are charged with the responsibility of
articulating the rules governing accrual. 
See Childs v. Haussecker, 974 S.W.2d 31, 36 (Tex. 1998)
(citations omitted).  In those cases when
the Anature of the
injury incurred is inherently undiscoverable and the evidence of injury is
objectively verifiable,@ courts apply the discovery rule.  See id. at 37 (quoting Computer
Assocs. Int=l, Inc. v. Altai, Inc., 918 S.W.2d 453,
456 (Tex. 1994)).  Under the discovery
rule, a cause of action does not accrue Auntil a plaintiff
knows, or through the exercise of reasonable care and diligence, >should have known
of the wrongful act and the resulting injury.=@ Id.
(citing S.V. v. R.V., 933 S.W.2d 1, 4 (Tex. 1996)).  In Childs, the Texas Supreme Court was
faced with the correct formulation and application of the discovery rule in the
latent occupational disease context.  974
S.W.2d at 33.  The court adopted a rule
and explained its application as follows:

We therefore hold that the approach
that best balances the interests implicated in latent occupational disease
cases is one that defers accrual until a plaintiff=s symptoms manifest themselves to a
degree or for a duration that would put a reasonable person on notice that he
or she suffers from some injury and he or she knows, or in the exercise of
reasonable diligence should have known, that the injury is likely
work-related.  Thus, in cases involving
latent occupational diseases, >discovery of the injury= should not be equated with a plaintiff=s discovery (1) of the precise name
of the disease that is causing his symptoms or (2) that the disease is
permanent.  The seriousness of a personal
injury need not be fully apparent or even fully developed in order to commence
the statute of limitations.

Id. at 40B41.  The court reiterated that Aa final diagnosis
is not always necessary before a cause of action can accrue,@ and also
emphasized that Aa plaintiff whose condition has not been
affirmatively diagnosed by a physician can have or, in the exercise of
reasonable diligence could have, access to information that requires or would
require a reasonable person to conclude he likely suffers from a work-related
illness.@  Id. at 42.  The court also stated that a plaintiff=s suspicions about
the nature and cause of her injury, which may be evidenced by the filing of a
worker=s compensation
claim or lawsuit, Arepresent an additional factor that, when
considered with the other facts and circumstances presented by each case, could
give rise to conflicting inferences about the plaintiff=s knowledge of the
injury and its likely cause.@  Id. at 43.  Although inquiries involving the discovery
rule usually entail questions for the trier of fact, Athe commencement
of the limitations period may be determined as a matter of law if reasonable
minds could not differ about the conclusion to be drawn from the facts in the
record.@  Id. at 44.








In this case, the evidence submitted by
appellees as support for their motion reflects that Dixon was admitted to St.
Francis Hospital in Tulsa, Oklahoma on November 29, 1996, and discharged on
December 5, 1996. The discharge summary was transcribed after Dixon was
discharged.  He complained of a sudden
onset of nausea and vomiting.  He Aadmitted to having
a history of working as a sandblaster for approximately twelve years.@  He said he was homeless and Aduring the early
Fall [was] in the deserts of southern California, Arizona and Nevada.@  He Ahad associated
shortness of breath and productive cough with green sputum.@  Dixon=s x-rays showed Aunusual bilateral
pulmonary opacities in the mid and upper lung fields consistent with possible
tuberculosis.@ 
Another entry on the discharge summary reads as follows:

Chest x-ray two view [sic] showed
bilateral pulmonary opacities in the mid and upper lungs consistent with
tuberculosis, though likely chronic in nature. 
The possibility of underlying active tuberculosis could not be totally
excluded; comparison with previous studies was recommended to evaluate possible
changes.  At the time, we are unable to
obtain old chest x-rays.  

The discharge summary also states, AThe patient is a
veteran and has been treated in Amarillo, Texas.  He says he has had a history of >bad chest x-rays= for many years
and in the past has not been diagnosed with tuberculosis.@  The written discharge diagnoses were A[a]ctive pulmonary
tuberculosis@ and A[s]ilicosis
secondary to twelve-year history of sandblasting.@  Among the ADischarge
Instructions@ was the following notation:  AThe patient is to
follow-up [sic] at the Tulsa County Health Department Tuberculosis Clinic.@  It also reads as follows:  AThe December 14,
1996, sputum cultures reported positive for tuberculosis.  Will try to contact patient.@  December 14 was nine days after Dixon=s discharge from
the hospital.  Excerpts of Dixon=s May 22, 2001
deposition given in this case, also submitted as evidence in support of
appellees= motion, contains Dixon=s testimony that
he had pneumonia in 1996 and his statement that the pneumonia was connected
with silicosis.  He also, however, said
that in 1996, St. Francis Hospital had Afound this stuff,
you know, they thought was tuberculosis.@








In response to appellees= motion, Dixon
submitted additional documents relating to his 1996 hospital stay.  In a AHistory and
Physical,@ dictated and transcribed on December 1,
1996 when Dixon was admitted to St. Francis Hospital in Tulsa, the AHistory@ section begins as
follows: AThis 52-year old White male had a sudden
onset of nausea and vomiting for 14 hours, beginning on the 29th of November,
1996, after he had eaten some food, associated with shortness of breath and
cough productive of green sputum . . . . 
He also complained of diffuse abdominal spasm of the entire abdomen with
no diarrhea.@ 
Under the category of APulmonary,@ it reads that
Dixon had A[n]o known history of pneumonia or
tuberculosis.@ 
The chest x-ray then showed Abilateral mid
upper lung coarse infiltrates and volume loss; questionable old tuberculosis.@  AImpression@ given was A[p]robable
pneumonia@ and A[q]uestionable
tuberculosis.@ 
The physician also noted A[t]here is a left
inguinal hernia present.@

Dixon also submitted an affidavit saying
that he was not diagnosed with silicosis or an occupation-related lung disease
until late April or early May of 1998. 
Regarding the 1996 hospital stay, Dixon said that he was tested for
tuberculosis and was given breathing treatments.  He said he was told his x-rays were abnormal
but inconclusive and was told that his problem appeared to be
tuberculosis.  He further testified that
he was not told by the doctor who treated him during that hospital stay that he
had silicosis or that his lung problems were related to his work as a
sandblaster.  He also testified that he
did not receive any medical records from St. Francis Hospital after his
discharge.  He said that in July of 1997,
he had the inguinal hernia repaired by the Amarillo VA.  He further testified,

Prior to the
surgery, an x-ray was taken of my lungs which showed an abnormality.  The surgeon told me that my x-ray showed that
I may have active tuberculosis.  After
the hernia repair, I was put in respiratory isolation until the doctors knew if
I have tuberculosis or not.  When the
test came back negative, I was discharged about 3 or 4 days later.








Dixon said that he was not contacted by
his treating physician or any other staff from St. Francis Hospital after his
discharge in December of 1996.  In his
Application for Disability Insurance Benefits, filed in June of 1999 and
submitted by Dixon as part of his evidence in opposition to summary judgment,
Dixon said, AI became unable to work because of my
disabling condition on April 1, 1990.@  (The typewritten form initially said April 1,
1998, but 1998 was crossed out in handwriting and 1990 written in and initialed
by R.D.D. (Dixon=s initials)).  Additional excerpts of Dixon=s deposition
reflect that Dixon had heard the word silicosis in the late 1980s, and he said
he was diagnosed with it in May 1998.  He
also denied having had chest x-rays taken prior to early 1998 and said he had
asthma for more than five years.  In a
May 31, 2001 report prepared by an expert retained by Dixon, a physician said
that Dixon Awas having problems with shortness of
breath in the 1990s but did not understand why or do much in the way of
evaluation.@  He
also wrote that a 1978 chest x-ray was normal and that Dixon Awas hospitalized
with >pneumonia= in St. Francis
Hospital in 1996.@

We do not find Dixon=s deposition
testimony in 2001, in which he said he had pneumonia in 1996 due to silicosis,
to be persuasive evidence as to what Dixon knew or should have known regarding
his condition and its cause in 1996 or, at a minimum, before March 8, 1998
(more than two years prior to his filing suit). 
Prior to his deposition, he had been affirmatively diagnosed with
silicosis, and it is highly plausible that his explanation that the pneumonia
he had in 1996 was related to silicosis was based on his new understanding of
his condition.  The same is true for the
statement on his application for disability benefits that he became unable to
work in April of 1990.  That statement
does not reflect what Dixon knew or should have known in 1996.  To the contrary, our review of the summary
judgment evidence reflects there is contradictory testimony as to whether Dixon
had Abad@ x-rays prior to
1996 and whether he knew or should have known in 1996 or earlier that he had a
work-related disease.








Appellees have not met their burden of
proving that Dixon did receive his medical records from St. Francis Hospital
before April of 1998.  At a minimum, a
fact question exists as to whether Dixon received those records or was
contacted after his discharge by his treating physician during that stay,
especially in light of Dixon=s testimony that
he was homeless at that time.  Based on
our review of the summary judgment evidence properly before the trial court,
prior to April of 1998, it was not unreasonable for Dixon to think his
respiratory problems were related to tuberculosis, a probable diagnosis he was
given more than once.  Furthermore,
appellees presented no evidence to show that Dixon failed to exercise due
diligence in treating his symptoms between the time of his discharge from St.
Francis hospital in December of 1996 and his awareness he had an
occupation-related lung disease in April or May of 1998Ca time period of
less than 15 months.[3]








Thus, reviewing the evidence in a light
most favorable to Dixon, there is a fact question as to when Dixon knew or
should have known his illness was work related. 
See, e.g., Childs, 974 S.W.2d at 45B46 (stating that
summary judgment for defendant was improper because fact question arose as to
what plaintiff knew about his illness= connection with
his work, even when co-workers were suffering from similar symptoms and
plaintiff suspected he had an occupational illness; doctors affirmatively told
plaintiff his symptoms and illnesses were not work-related); Youngblood v.
U.S. Silica Co., No. 06-03-00020-CV, 2003 WL 22964572, at * 4 (Tex. App.CTexarkana Dec. 18,
2003, no pet. h.) (not designated for publication) (reversing summary judgment
granted for employer on basis of limitations in silicosis lawsuit because
although plaintiff had received news of abnormal x-rays, there was no evidence
plaintiff was made aware of differential diagnoses of silicosis and it was
reasonable for plaintiff to believe he had tuberculosis until he was told he
had silicosis less than two years before filing suit).  We therefore find the trial court erred in
granting summary judgment.

We reverse the trial court=s judgment and
remand the case for further proceedings consistent with this opinion.

 

 

 

 

/s/      Leslie Brock Yates

Justice

 

 

 

 

Judgment
rendered and Majority and Dissenting Opinions filed February 19, 2004.

Panel
consists of Justices Yates, Hudson, and Fowler. 
(Hudson, J. dissenting.)

 











[1]  Appellees did
not file a response to Dixon=s motion to strike, asking the trial court to grant
leave for the filing of additional summary judgment evidence, and we are not at
liberty to treat the trial court=s orders
denying the motion to strike or granting summary judgment as implied rulings
granting such leave when neither order contained any language to that
effect.  See Neimes v. Ta, 985
S.W.2d 132, 138 (Tex. App.CSan Antonio 1998, pet. dism=d by agr.) (AThe
Texas Supreme Court has mandated that we presume the trial court did not
consider a late-filed response unless something in the record indicates it
did.  Accordingly, whether the record
contains the requisite >something= is
dispositive.  Because this factor,
standing alone, is dispositive, no other factorCincluding
whether a movant objectsCis or can be material.@)
(citations omitted).  Moreover, if we
were to hold that the denial of the motion to strike was equivalent to a grant
of leave for a movant to file summary judgment evidence less than twenty-one
days before the summary judgment hearing, we would be relieving movants of
their responsibility to timely file their supporting evidence, as required by Rule
166a(c), and improperly shifting the burden from movants to nonmovants.  See id. (A[W]e hold . . . that appellants were not required to
object to [nonmovants=] response as untimely filed.  To hold otherwise . . . would be logically
inconsistent with the burden expressly placed on summary judgment respondents
by the Supreme Court of Texas in Rule 166a(c) and with the presumption the
court has mandated by its interpretation of the rule.@).





[2]  Although our
disposition of Dixon=s first issue does not require us to address appellees= argument that they were surprised by Dixon=s reliance on the discovery rule in his response to
their motion for summary judgment, we note that appellees= motion for summary judgment squarely contradicts any
claim of surprise or prejudice by Dixon=s
reliance on the discovery rule=s application to his claims.  In any event, Plaintiff=s Fourth Amended Petition is presumed timely
filed.  See Goswami v. Metro.
Savings & Loan Ass=n, 751
S.W.2d 487, 490B91 (Tex. 1988) (stating that when record is silent of
any basis to conclude that the amended petition was not considered by the trial
court, and when opposing party has not shown surprise or prejudice, leave of
court is presumed) (citations omitted); Wilson v. Korthauer, 21 S.W.3d
573, 578 (Tex. App.CHouston [14th Dist.] 2000, no pet.) (citing Goswami
for its recitation of two factors for when leave is presumed for amended
pleading).





[3]  The dissent
argues that Dixon failed to exercise due diligence after his discharge from the
hospital in December of 1996 and again after he was discharged from the
hospital in July of 1997, when he was told that he did not have
tuberculosis.  We are persuaded, however,
that Childs suggests that a fact question remains as to when Dixon knew
or should have known through the exercise of reasonable diligence that his
injury was work-related.  In Childs,
the Supreme Court rejected the arguments that the claims of the two plaintiffs
at issue, Haussecker and Martinez, were time-barred despite facts more
favorable to the defendants than those of this case.  Childs, 974 S.W.2d at 45.  Regarding Haussecker, the court reached this
conclusion even though, as early as the 1960s, Haussecker suspected he had an
occupational illness because several of his co-workers had died, including one
who had died of silicosis.  Id.  However, several doctors dispelled Haussecker=s suspicions by telling him that his symptoms were not
work-related.  Id.  Also, the defendant offered no evidence about
whether Haussecker stopped consulting doctors about his deteriorating health
during an earlier time period or whether he could have been diagnosed with an
occupational illness during that time period. 
Id. at 46.  With respect to
Martinez, who filed suit on August 13, 1992, he had filed a worker=s compensation claim in 1989 for a lung disease
arising out of and in the course of his employment.  Id. at 36.  Yet, he said he did not visit a doctor until
September 1990 because he could not afford a doctor, and his worker=s compensation carrier refused to pay for his medical
treatment.  Id.  Although he was told by that doctor something
was wrong and the doctor recommended a biopsy, Martinez did not comply because
he allegedly could not afford it.  Id.  Accordingly, a biopsy was not performed until
a year later, when Martinez was told he had silicosis.  Id. 
The court said Martinez failed to exercise reasonable diligence once he
was apprised of facts that would prompt a reasonably diligent person to seek
information about his injury and its likely causes.  Id. at 47.  The court nonetheless held that Martinez=s claims were not time-barred as a matter of law
because the defendant failed to offer any summary judgment evidence that a
reasonably diligent investigation would have led Martinez to discover before
August 13, 1990, that he suffered an occupational illness.  Id. 
Therefore, a fact question existed with respect to whether Martinez knew
or should have known through the exercise of reasonable diligence that his
injury was likely work-related before August 13, 1990.  Id. 
In light of the supreme court=s
treatment of Martinez=s and Haussecker=s
claims, we are compelled to hold that a fact question remains as to whether
Dixon knew or should have known through the exercise of reasonable diligence
that his injury was likely work-related before March 8, 1998.  Appellees have presented no evidence that a
reasonably diligent investigation would have led Dixon to discover before March
8, 1998, that he suffered from a work-related illness.