Affirmed in part, Reversed and Remanded in Part and Opinion filed March
28, 2006









Affirmed in part, Reversed and
Remanded in Part and Opinion
filed March 28, 2006.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-04-00849-CV

____________

 

J.M.K. 6,
INC.,
Appellant

 

V.

 

GREGG
& GREGG, P.C. AND DICK H. GREGG, JR., Appellees

________________________________________________________

 

On Appeal from the 334th District Court

Harris County, Texas

Trial Court Cause No. 03-26341

________________________________________________________

 

O P I N I O N








In this appeal, we decide (1) whether the Hughes
tolling rule applies to certain third-party claims; (2) whether these
third-party claims are Across claims@ subject to section 16.069 of the Texas Civil Practice and
Remedies Code; and (3) whether the trial court erred in dismissing the
third-party claims for contribution and indemnity.  Because the Hughes rule does not
extend the time for a client to file suit against his attorney if the attorney
did not provide legal services in the prosecution or defense of a claim, we
answer the first question in the negative. 
We further conclude that, although a third-party claim is not a Across claim@ within the scope of Tex. Civ. Prac. & Rem. Code Ann. ' 16.069, the trial court erred in
dismissing appellant=s third-party claims for contribution and indemnity.  We therefore affirm in part,
reverse in part, and remand.

I.  Procedural
Background

On May 20, 2003, BMW Partners,
L.L.C. (ABMW@) and
Tyson & Associates, L.L.C. (ATyson@) sued
appellant J.M.K. 6, Inc. (AJ.M.K.@) and
Chicago Title for fraud in connection with a real estate transaction.[1]  On September 2, 2003, J.M.K. joined its
attorney Dick H. Gregg, Jr. and his firm, Gregg & Gregg, P.C.
(collectively, AGregg@) as
third-party defendants, asserting claims for negligence, negligent
misrepresentation, promissory estoppel, deceptive trade practices,
contribution, and indemnity.  Gregg first
filed a motion for summary judgment asserting the statute of limitations and
then filed a separate summary judgment motion asserting several grounds against
J.M.K.=s claims
for contribution and indemnity.  The
trial court granted both motions, dismissed J.M.K.=s
third-party claims, and granted a severance, making the judgments final and
appealable.

II.  Factual
Background








Jerome Karam was in the business
of acquiring apartment complexes, converting them to condominiums, and selling
the condominium units to third parties. 
Karam hired Gregg to incorporate the legal entities that would own the
condominiums.  The corporation would then
hire Gregg to convert the apartments to the condominium form of ownership.  Gregg and J.M.K. dispute the scope of Gregg=s duties
beyond this point.  Gregg contends that
his duties were limited to performing certain specified tasks relating to the
condominium conversion.  In contrast,
J.M.K. asserts that Gregg also had the broader duty to ensure that the
condominiums were ready for sale.  The
parties agree that Gregg incorporated J.M.K., represented it in connection with
the conversion of the complex at issue, Bryn Mawr, and prepared and filed the
condominium declaration on August 9, 2000, in Harris County.

BMW and Tyson agreed to purchase
several condominiums in the Bryn Mawr project. J.M.K. claims that, prior to
closing the sale, Gregg informed J.M.K. it had complied with all legal
requirements necessary to convert the Bryn Mawr complex to condominiums and
that the units were ready to be sold. 
J.M.K. also alleges that, prior to the closing date, Gregg and Karam, as
J.M.K.=s
president, had a conference call with an agent of BMW and Tyson.  During that call, Gregg allegedly represented
to BMW and Tyson that all legal requirements necessary to convert the complex
to condominiums were complete, and that the closing could proceed.  This sale was completed in August 2000.

Almost a year later, on June 25,
2001, Karam attended a meeting of the City of Pasadena Planning and Zoning
Commission to discuss Southmore, another of Karam=s
developments.  According to the minutes
of that meeting, the Commission found that the Southmore project failed to
satisfy nineteen of the City=s
building code requirements.[2]  Karam responded that he was willing to
comply, but was not prepared to address the issues.  The minutes reflect the following:

He [Karam] will do
whatever it takes to comply with the requirements, but he is not prepared to
address these issues.  His attorney had advised
him this project was in compliance with the state condominium conversion act
and the City of Pasadena adheres to that, so he is not prepared to answer
questions about these issues.

 








In response to further
questioning by the commission, the minutes reflect Karam:

Stated
again that his attorney had checked with the attorney for City of Pasadena
regarding compliance.  Commissioner Fox
said what probably happened was if this were the typical apartment project with
green space and such, it would have complied which is what the city attorney
probably thought. However, the way this building is constructed and the
property is developed, it presents a different situation.  He stated he=s not sure how some of
these issues can be resolved.  Had it
come to this board prior to the deeds being recorded, it could have been
addressed one issue at a time . . . Mr. Karam said if he could work with
someone who will explain what the main issues are, this project is priority to
him and he will focus on getting the situation resolved . . . Mr.
Karam commented that he wants to comply with the rules and regulations and
apologized that he was unaware of all these requirements prior to beginning the
project . . . Mr. Karam asked if they have authority to grant the variances, to
which he was answered variances are granted by city council, but only after a
recommendation is made by the commission 
. . . Commissioner Thomas made a motion to disapprove the preliminary
review of Southmore Townhomes conversion from apartment/townhomes to
condominiums, seconded by Commissioner Mills. 
The motion carried unanimously.

 

The parties do not dispute that
Karam understood the issues raised with respect to the Southmore property also
affected the Bryn Mawr property.  After
the June 25th meeting, J.M.K. spent several months attempting to persuade the
City to recognize the Bryn Mawr conversion. 
Karam later testified that A[t]he
City of Pasadena has never flatly refused to recognize the possibility of an
effective conversion of the apartments to condominiums,@ but in
December 2001, Athe
Commissioners definitively informed us that, in order for the City to recognize
the conversion, [J.M.K.] would have to spend approximately $2 million on
various improvements and modifications. 
Because of the financial magnitude of the City=s
requirements, this was not a viable solution.@  








In the
underlying suit, both BMW and Tyson alleged that J.M.K. and Chicago Title made
false representations regarding the truth and accuracy of various documents,
including, but not limited to, false representations in the settlement
statement, the contract of sale, and the warranty deed.  According to BMW and Tyson, the settlement
statements and other documents had been prepared by or at the request of
Chicago Title, and reflected that the purchasers were acquiring fee simple
title to Acondominium units.@  BMW and Tyson alleged that the units were not
actually condominiums, because the conversion of the property took place
without prior approval from the City and in contravention of the City=s
subdivision ordinances.  Although J.M.K.
apparently abandoned its efforts to change the City=s
decision in December 2001, BMW and Tyson allegedly purchased units as late as
April of 2002 without the knowledge that the City had not recognized the
condominium conversion.

Suit was
filed in May 2003, but J.M.K. was never served with citation.  In July 2003, J.M.K.=s trial
counsel agreed to voluntarily answer the petition.  The petition was forwarded to J.M.K.=s counsel
on July 10, 2003.  On September 2, 2003,
J.M.K. filed its original answer, a cross claim against co-defendant Chicago
Title Insurance Co., and a third-party petition against Dick Gregg, Jr. and his
firm.[3]


Gregg
filed an answer asserting that the claims were time-barred, and that Gregg had
nothing to do with the drafting or handling of the documents at issue.  Gregg successfully moved for summary judgment
on the affirmative defense that the two-year statute of limitations barred
J.M.K.=s
claims.  After J.M.K. filed a motion for
new trial asserting that the statute of limitations could not have possibly run
as to its claim for contribution and indemnity, Gregg filed a second motion for
summary judgment conceding that its limitations defense did not apply to the
contribution and indemnity claims and asserting that these claims failed as a
matter of law on several other grounds. 
The trial court granted Gregg=s second
summary judgment motion and severed the third-party claims to make its judgment
final.  This appeal ensued.








III.  Issues
Presented

On
appeal, J.M.K. asserts that (1) the trial court erred in granting the second
motion for summary judgment as to its contribution and indemnity claims; (2)
the two-year statute of limitations does not bar its third-party claims because
the claims are Across
claims@ under
section 16.069 of the Texas Civil Practice and Remedies Code; and (3) the Hughes
tolling rule applies, therefore, limitations did not begin to run until
December 2001.  In evaluating these
issues, we first determine the accrual date for J.M.K.=s claims
against Gregg for negligence, negligent misrepresentation, promissory estoppel,
and deceptive trade practices (hereinafter collectively referred to as ALegal
Malpractice Claims@).  If these claims accrued more than two years
before J.M.K. sued Gregg, we need not address J.M.K.=s second
and third issues.

IV.  Standard
of Review

Gregg did
not state in either motion for summary judgment whether it was seeking
traditional summary judgment or no-evidence summary judgment.  Compare Tex.
R. Civ. P. 166a(c), with Tex.
R. Civ. P. 166a(i).  The two forms
of summary judgment are distinct and invoke different standards of review.  Lavaca Bay Autoworld, L.L.C. v. Marshall
Pontiac Buick Oldsmobile, 103 S.W.3d 650, 653 (Tex. App.CCorpus
Christi 2003, no pet.).  Because J.M.K.
received no notice that Gregg sought no-evidence summary judgments, we presume
Gregg sought traditional summary judgments. 
Adams v. Reynolds Tile and Flooring, Inc., 120 S.W.3d 417, 419B20 (Tex.
App.CHouston
[14th Dist.] 2003, no pet.) (where the summary-judgment motion does not
unambiguously state it is filed under Rule 166a(i) and does not strictly comply
with the requirements of that rule, it will be construed as a traditional
summary-judgment motion).








In a
traditional motion for summary judgment, the movant has the burden of showing
that there is no genuine issue of material fact and that it is entitled to
judgment as a matter of law.  Am.
Tobacco Co. v. Grinnell, 951 S.W.2d 420, 425 (Tex. 1997).  When reviewing a summary judgment, we take as
true all evidence favorable to the nonmovant, and we indulge every reasonable
inference and resolve any doubts in the nonmovant=s
favor.  Joe v. Two Thirty Nine Joint
Venture, 145 S.W.3d 150, 157 (Tex. 2004). 
Under Texas Rule of Civil Procedure 166a(c), the party moving for
traditional summary judgment bears the burden to show that no genuine issue of
material fact exists and that it is entitled to judgment as a matter of law.  Id.  We affirm the summary judgment if any theory
presented to the trial court is sufficient to sustain the judgment.  Id. 
Traditional summary judgment for a defendant is proper only when the
defendant negates at least one element of each of the plaintiff=s
theories of recovery, or pleads and conclusively establishes each element of an
affirmative defense.  Sci. Spectrum,
Inc. v. Martinez, 941 S.W.2d 910, 911 (Tex. 1997); Castillo v. Westwood
Furniture, Inc., 25 S.W.3d 858, 860 (Tex. App.CHouston
[14th Dist.] 2000, no pet.).

V.  Analysis

A.        Accrual of the Legal
Malpractice Claims

The
parties do not dispute that J.M.K.=s Legal
Malpractice Claims are subject to a two-year limitations period.  Generally, a legal malpractice claim accrues
when the client sustains a legal injury or, in cases governed by the discovery
rule, when the client discovers or should have discovered the facts
establishing the elements of its claim. 
Hughes v. Mahaney & Higgins, 821 S.W.2d 154, 156 (Tex.
1991).  Gregg therefore had the burden to
prove that J.M.K. knew or should have known the facts establishing its claims
more than two years before the third-party petition was filed.  See Woods v. William M. Mercer, Inc.,
769 S.W.2d 515, 517 (Tex. 1988) (limitations is an affirmative defense that
must be proven by the asserting party). 








Gregg
contends that the Legal Malpractice Claims accrued on August 9, 2000Cthe date
that the Declaration and Master Plat for Bryn Mawr Condominiums was filed.  Gregg also claims that Karam was aware of the
problems with the Bryn Mawr project on or before the June 25, 2001 meeting of
the Pasadena Planning and Zoning Commission. 
J.M.K. does not dispute that the June 25, 2001 meeting included Aa
discussion of the City=s
position that the property had not been effectively converted from apartments
to condominiums.@  Despite the continued efforts of J.M.K. and
its attorneys, including Gregg, to persuade the City to recognize the
condominium conversion, the undisputed evidence shows that the City of Pasadena=s
Planning and Zoning Commission unanimously passed a motion on June 25, 2001,
disapproving the type of condominium conversion at issue in the Bryn Mawr
project.  No summary-judgment evidence
shows that the City voted or took other official action regarding the Bryn Mawr
project after June 25, 2001.  

The time
for accrual of a claim is a question of law. 
Moreno v. Sterling Drug, Inc., 787 S.W.2d 348, 351 (Tex.
1990).  Where applicable, the discovery
rule defers the accrual of a claim until the plaintiff knew or, in the exercise
of reasonable diligence, should have known of the wrongfully caused
injury.  Wagner & Brown, Ltd. v.
Horwood, 58 S.W.3d 732, 735 (Tex. 2001). 
The plaintiff need not know the specific nature of each wrongful act
that may have caused the injury for his claim to accrue under the discovery
rule.  Id.  Rather, it accrues when the plaintiff
discovers or, in the exercise of reasonable diligence, should discover the Anature of
his injury.@ 
Childs v. Haussecker, 974 S.W.2d 31, 40 (Tex. 1998).  Thus, the discovery rule only defers accrual
of a claim until the plaintiff discovers, or should have discovered through
reasonable diligence, the injury and that it was likely caused by the wrongful
acts of another.  Id.  








By June 25, 2001, J.M.K. was
aware that Gregg had allegedly failed to take all steps necessary for the City
of Pasadena to recognize the Bryn Mawr conversion.  J.M.K. does not rest its claim for liability
on any acts or omissions by Gregg subsequent to that date; however, J.M.K.
claims that at a meeting in December 2001, Athe
Commissioners definitively informed [J.M.K.] that, in order for the City to
recognize the conversion, [J.M.K] would have to spend approximately $2 million
on various improvements and modifications.@  Thus, J.M.K. argues that the Legal
Malpractice Claims accrued in December 2001, when J.M.K. learned the cost of
the modifications requested by the City. 
J.M.K. does not deny knowing that it had potential claims on June 25,
2001; rather, J.M.K.=s
president Acontinued to believe that the
Commission would ultimately recognize the effectiveness of the conversion, and
continued to assert this position before the Commission.@  When J.M.K. ultimately learned the cost of
the modifications necessary to address all of the City=s
concerns, J.M.K. determined that compliance Awas not a
viable solution.@  There is no indication in the record that
J.M.K. continued its efforts to persuade the Commission to reverse its earlier
decision and recognize the conversion after this time.  J.M.K. therefore argues that the statute of
limitations should have been tolled until December 2001.

The discovery rule tolls the
statute of limitations only until such time as the plaintiff, in the exercise
of reasonable diligence, should have discovered the Anature of
his injury.@ 
Childs, 974 S.W.2d at 40. 
This is an objective inquiry into whether the plaintiff should have
discovered the injury, and not an inquiry into the plaintiff=s
subjective belief as to whether the injury could be remedied affordably.  Regardless of J.M.K.=s
subjective belief that the injury could be successfully remedied either by
persuading the Commission to reverse its earlier ruling or by making the
modifications the Commission required, J.M.K. was aware of the alleged injury
on June 25, 2001.  Even if J.M.K. could
not have known the cost of repairs before December 2001, this information did
not constitute knowledge of an additional wrong by Gregg, but pertained only to
the cost to remedy alleged prior omissions. 
It was not necessary that J.M.K. know the extent of its damages; it was
sufficient that it knew on June 25, 2001, it had been damaged.  See Schneider Nat=l
Carriers, Inc. v. Bates, 147 S.W.3d 264, 279 (Tex. 2004) (Aeven when
the discovery rule applies, accrual occurs upon notice of injury, even if the
claimant does not yet know the full extent of damages or the chances of
avoiding them.@).  The statute of limitations therefore began to
run on that date, unless otherwise modified by the Hughes tolling rule.

 








1.         The Hughes Rule Does
Not Apply to the Legal Malpractice Claims

In its third issue, J.M.K.
contends that the Hughes rule tolls limitations Awhile the
lawyer and client attempt to convince a municipality . . . [to] reconsider its
decision.@[4] 

When an attorney commits
malpractice in the prosecution or defense of a claim that results in
litigation, the statute of limitations on the malpractice claim against the
attorney is tolled until all appeals on the underlying claim are exhausted or
the litigation is otherwise finally concluded. 
Apex Towing Co. v. Tolin, 41 S.W.3d 118, 119 (Tex. 2001).  This is known as the Hughes rule.  See Hughes v. Mahaney & Higgins,
821 S.W.2d 154, 156 (Tex. 1991).

J.M.K. invites this court to
extend the Hughes rule to the present case, and asks us to conclude that
the statute of limitations for legal malpractice claims is tolled while an
attorney and his client attempt to persuade a municipality to Areconsider
its decision.@ 
Specifically, in Karam=s
affidavit attached to its summary judgment response, J.M.K. contends:

[If it] had asserted its malpractice claims
against the Gregg Defendants immediately following the June 25, 2001 meeting,
the basis of its claim would have been that the conversion from apartments to
condominiums was not effective.  During
this same time period, [J.M.K.] was asserting to the City of Pasadena that the
conversion was effective.  The
position that [J.M.K.] was advocating in the meetings with the City of Pasadena
Planning and Zoning Commission was inconsistent with a claim that the
conversion was not effective. [J.M.K.] did not file suit against [Gregg]
following the June 25, 2001 meeting because it, assisted by Mr. Gregg and
[other counsel], hoped that it could convince the City of Pasadena that the
conversion had been properly done, and continued to advocate this position to
the Commission.








J.M.K. correctly argues that Hughes
was motivated in part by the desire to ameliorate the conflict that results
Awhen a
client is forced into adopting inherently inconsistent litigation postures in
the underlying case and in the malpractice case.@ Hughes,
821 S.W.2d at 156.  J.M.K. therefore asks
us to apply the Hughes rule because J.M.K. was forced to adopt
inherently inconsistent positions in its negotiations with the City and in its
claims against Gregg.  J.M.K. argues that
we should determine whether the Hughes rule applies on a case-by-case
basis, and apply the rule where its use is justified for policy reasons.  

This argument was presented to
and rejected by the Texas Supreme Court in Apex Towing.  As the Court noted, Aclear and
strict application of the Hughes tolling rule comports with our efforts
to maintain a categorical approach when determining whether the discovery rule
applies to certain types of claims.@  Id. at 122.  The Court emphasized that, Awithout
re-examining whether the policy reasons behind the tolling rule apply in each
legal-malpractice case matching the Hughes paradigm, courts should
simply apply the Hughes tolling rule to the category of
legal-malpractice cases encompassed within its definition.@  Id. 
Following the bright-line approach set forth in Apex Towing Co.,
we therefore limit our inquiry to determining whether the malpractice is
alleged to have occurred Ain the
prosecution or defense of a claim that results in litigation.@  








Here, J.M.K. alleges that Gregg
was hired to convert the apartment complex to condominiums and to ensure that
the property was ready for sale. 
Regardless of whether J.M.K. was later forced to adopt inconsistent
positions concerning the adequacy of Gregg=s work, the
services do not constitute Athe
prosecution or defense of a claim.@[5]  Because the work that Gregg allegedly
performed improperly does not constitute Athe
prosecution or defense of a claim,@ we
conclude the Hughes tolling rule does not apply.  Accordingly, we overrule J.M.K.=s third
issue and hold that the statute of limitations on J.M.K.=s
malpractice claims began to run on June 25, 2001, and expired two years later
on June 25, 2003.

2.         A Claim Asserting a Third-Party Plaintiff=s Independent Cause of
Action Against a New Third-Party Defendant Is Not a ACross Claim@

 

J.M.K. filed its third-party
petition against Gregg on September 2, 2003, more than two years after the
Legal Malpractice Claims accrued on June 25, 2001.  In J.M.K.=s second
issue, it asserts the Legal Malpractice Claims are not barred by limitations
because these third-party claims constitute a cross claim under section 16.069
of the Texas Civil Practice and Remedies Code.[6]

Section 16.069 provides:

(a)       If a counterclaim or cross claim arises
out of the same transaction or occurrence that is the basis of an action, a
party to the action may file the counterclaim or cross claim even though as a
separate action it would be barred by limitation on the date the party's answer
is required.

(b)       The counterclaim or cross claim must be
filed not later than the 30th day after the date on which the party's answer is
required.

 








Tex. Civ. Prac. &
Rem. Code Ann. ' 16.069 (Vernon 2002).  The statute makes no mention of third-party
practice, and by its express terms applies only to counterclaims and cross
claims.  Where the requirements of the
statute are met, section 16.069 allows those who are already parties to the
action to assert claims against one another that would otherwise be
time-barred.  However, section 16.069
does not address claims against nonparties. 
J.M.K. therefore relies on Smith v. Lone Star Cadillac, Inc., 470
S.W.2d 791 (Tex. App.CWaco
1971, no writ) in an attempt to expand the definition of Acounterclaim
or cross claim@ to include a third-party action.

In Lone Star Cadillac, the
plaintiff sued the defendant Smith for damages from an automobile
collision.  Lone Star Cadillac, Inc.,
470 S.W.2d at 791.  Smith then filed a
third-party claim against Lone Star, alleging that it placed grease on his car=s brake
pedal, and that Lone Star was the proximate or sole cause of the collision and
damages.  Id.  The trial court granted Lone Star summary
judgment on the grounds that Smith=s
third-party action was barred by the statute of limitations.  Id. at 792.  The Tenth Court of Appeals reversed, holding
that the third-party claim was a Across
claim@ for the
purposes of extending the statute of limitations under Article 5539c, the
predecessor statute to section 16.069 (Vernon 2002).  Id. at 792.  J.M.K. asks us to follow the reasoning of Lone
Star Cadillac and hold the Legal Malpractice Claims against Gregg are not
time-barred.  We decline to do so.

We note first that Lone Star
Cadillac is distinguishable on its facts. 
Unlike the present case, the Lone Star Cadillac defendant
asserted a single claim that the third-party defendant was the cause Aof the
collision and damages.@  The opinion contains no indication that Smith
suffered damages, and we cannot infer that the third-party petition sought
recovery for Smith=s damages,
rather than contribution or indemnity for the plaintiff=s
damages.  








This distinction is important for
two reasons.  First, a claim for
indemnification or contribution does not accrue for limitations purposes until
a plaintiff recovers damages or settles its suit against a defendant.  Goose Creek Consol. Indep. Sch. Dist. of
Chambers and Harris Counties, Tex. v. Jarrar's Plumbing, Inc., 74 S.W.3d
486, 492 (Tex. App.CTexarkana
2002, pet. denied).  Because limitations
as to Smith=s claim for contribution or
indemnity had not run, it was unnecessary for the court to determine whether
the savings statute applied.  We
therefore consider the court=s
interpretation of the word Across
claim@ to be
dicta.  Second, because Smith only
asserted Lone Star=s
liability for the plaintiff=s
damages, we do not read the case as authority for J.M.K.=s
argument that section 16.069 should apply to revive claims for its own damages.

Even placing these considerations
aside, we do not agree that section 16.069=s use of
the phrase Across claim@
encompasses a third-party petition.  In
reaching this definition, the Lone Star court relied on Texas Rules of
Civil Procedure 38 and 97(f), and a page of a legal treatise.  However, these sources do not support a
conclusion that Section 16.069 applies to claims asserted in a third-party
petition.  

Rule 38 allows a defendant to
file an action Aagainst a
person not a party to the action who is or may be liable to him or to the
plaintiff for all or part of the plaintiff's claim against the defendant.@  It does not support an expansive definition
of the phrase Across claim.@  Rule 38 notes that the third-party defendant
may assert Acounterclaims against the
third-party plaintiff and cross-claims against other third-party defendants,@
following the definitions of a Athird-party
plaintiff@ as a defendant who asserts a
claim against a nonparty, a Acounterclaim@ as a
claim made against one on the opposing side of the case, and a Across
claim@ as a
claim made against one on the same side of the case.  It does not expand the definitions of these
words, but distinguishes among them. 
Rule 97(f) likewise uses the terms counterclaim and cross claim in ways
that exclude third-party claims. 

Lone Star also
cited to a page of Texas Jurisprudence without elaboration.  The section found on that page states:

The term Across action@ has in many instances
been used variously to denote a cross proceeding against an opposite party, a
coparty, a third party, or some combination of these parties.  Thus the term has been defined as an
independent suit, brought by defendant in a suit previously instituted against
the plaintiff.  Manifestly, the term as
so used is synonymous with Acounterclaim@ under the Rules of Civil
Procedure.  The rules further provide for
a Across claim@ against a coparty, and a Across action@ against a person not a
party to the action.[7]

 








Interestingly, neither the treatise itself nor any
of the cases on which it relied equate a third-party cross action with a
cross claim.[8]  Even while broadly interpreting Across
action,@ the
authors of the treatise continued to give the phrase Across
claim@ a
narrower reading, preserving the distinction between the terms.[9]


J.M.K. does not rest its argument
solely on Lone Star Cadillac and the sources cited therein, but also
points out similarities between section 16.069, which extends the time to file
counterclaims and cross claims, with section 33.004, which permits the
designation of responsible third parties under the proportionate responsibility
laws.  According to J.M.K., both sections
give a defendant thirty days after its answer is due to assert claims that it
is not solely responsible for the plaintiff=s
damages.  

Section 33.004 addresses joinder
of responsible third parties.  Tex. Civ. Prac. & Rem. Code Ann. ' 33.004
(Vernon 1997).[10]  A responsible third party must be one who
could have been, but was not, sued by the claimant, and must be potentially
liable to the plaintiff for the damages claimed against the named
defendant(s).  See Tex. Civ. Prac. & Rem. Code Ann. '
33.011(6)(A)(ii) and (iii) (Vernon Supp. 2002). 
In other words, a defendant who designates a responsible third party
pursuant to section 33.004 claims that the third party is responsible to the
plaintiff, not to the defendant.  The plaintiff=s
recovery against the defendant is then reduced by the percentage of the
responsible third party=s fault.








In contrast, section 16.069
addresses claims that arise Aout of
the same transaction or occurrence that is the basis of the action,@ and
permits a party to file counterclaims or cross claims against other
parties.  The statute was intended to
prevent a plaintiff from waiting until an adversary=s valid
claim arising from the same transaction was barred by limitations before
asserting his own claim.  Hobbs
Trailers v. J. T. Arnett Grain Co., Inc., 560 S.W.2d 85, 88B89 (Tex.
1977).  Simply stated, it prevents a
party from delaying a claim for his own benefit.  For that reason, the claims that may be
asserted under this section are not limited to claims for contribution; the
cross-claimant or counter-claimant may recover for his own damages from the
other parties to the suit if his claims arose out of the same transaction or
occurrence.  This is true even if the
cross-plaintiff or counter-plaintiff is not liable to the original plaintiff. 

While a thirty-day time period is
identified in both sections, the purposes of those sections are different.  Section 33.004 provides a mechanism for a
liable defendant to reduce the amount it is required to pay in compensation for
the plaintiff=s injuries; unlike section
16.069, it does not provide a means for a defendant=s own
recovery to be increased.  Where a third
party is found responsible, section 33.004 simply limits the defendant=s
liability.  By its express terms, section
33.004 is concerned only with nonparties, while section 16.069 by its express
terms is limited to parties.  








We are not persuaded by the
analogy drawn between limiting a defendant=s
liability to the amount of his own fault, and reviving a time-barred claim to
permit the defendant to recover on a separate claim.  Throughout the Civil Practices and Remedies
Code, distinctions are drawn between the various types of pleadings and their
effects.  Where the legislature has
intended third-party claims to be treated in the same manner as counterclaims
and cross claims, it has not hesitated to say so.[11]  We see no reason to disregard the plain
meaning of the words of the statute.  See
Tex. Gov=t Code Ann. ' 311.011
(Vernon 2005).  Moreover, the purpose of
section 16.069 would not be served by rewriting it to allow a defendant to
revive an expired claim against a non-party. 


Because the assertion of these
time-barred claims through a third-party petition does not fall within the
language or the intent of section 16.069, we overrule appellant=s second
issue. 

B.        Claim for Contribution
and Indemnity

Under its first issue, J.M.K.
asserts the trial court erred in granting summary judgment as to its
contribution claim because Gregg owed a duty to BMW and Tyson to refrain from
making misrepresentations.  J.M.K. also
argues the trial court erred in granting summary judgment on the indemnity claim
because Gregg was J.M.K.=s agent
when it made the representations at issue, and because J.M.K. was vicariously
liable for Gregg=s
representations.

In its second motion for summary
judgment, Gregg argued that J.M.K. was not entitled to assert contribution or
indemnity claims because such claims are merely derivative of the plaintiffs= right to
recover, and the plaintiffs have no possible cause of action against
Gregg.  Specifically, Gregg argued that
the plaintiffs have no viable cause of action against it on any claim of legal
malpractice, and that an attorney owes a duty only to those in privity of contract
with him.  See Dickey v. Jansen,
731 S.W.2d 581, 582B83 (Tex.
App.CHouston
[14th Dist.] 1987, writ ref=d
n.r.e.).  Gregg further claimed J.M.K.
has no right of contribution based on negligent misrepresentation because no
such claim was brought by plaintiffs against J.M.K.  The only claim brought against J.M.K. was
that of fraud in connection with a real estate transaction as defined in
section 27.01 of the Business and Commerce Code.  Additionally, Gregg argued J.M.K. has no
valid indemnity claim against Gregg under Texas law.  Finally, Gregg asserted in its summary-judgment
reply brief that it has no liability to any of the parties in the case because
there was no misrepresentation.








1.         Claim for Contribution

A defendant=s claim
of contribution is derivative of the plaintiff=s right
to recover from the defendant against whom contribution is sought.  Varela v. Am. Petrofina Co. of Tex., 658
S.W.2d 561, 562 (Tex. 1983).  Thus,
J.M.K.=s claim
of contribution depends upon whether BMW or Tyson has the right to recover damages
from Gregg.  See Shoemake v. Fogel,
Ltd., 826 S.W.2d 933, 935 (Tex. 1992). 
As the movant, Gregg bore the burden to establish that J.M.K. has no
right to contribution as a matter of law. 


Despite bearing the burden of
proof, the only evidence Gregg produced in support of its motion is the
affidavit of Dick Gregg, Jr., which recites only that the plaintiffs had never
been Gregg=s clients, nor had Gregg ever
agreed to represent BMW or Tyson.  This
point is not disputed, nor does it affect J.M.K.=s ability
to pursue contribution.  Gregg similarly
argues that, absent privity, BMW and Tyson cannot assert claims against it.

Gregg=s
position appears to be that it owes duties only to its clients, or to those in
privity with its clients; however, both an individual and a law firm are
capable of committing torts not encompassed in an attorney-client relationship,
and can be held liable when they do so. 
For example, Gregg can be liable to a non-client for negligent
misrepresentation:

One who, in the course of his business,
profession or employment, or in any transaction in which he has a pecuniary
interest, supplies false information for the guidance of others in their
business transactions, is subject to liability for pecuniary loss caused to
them by their justifiable reliance upon the information, if he fails to
exercise reasonable care or competence in obtaining or communicating the
information.

 

See McCamish, Martin, Brown & Loeffler v. F.E.
Appling Interests, 991 S.W.2d 787, 791 (Tex. 1999) (citing Restatement
(Second) of Torts '552).  The Texas Supreme Court has held that
attorneys can be liable to non-clients on exactly such grounds, and J.M.K has
alleged such liability.  See id.








In addition, both a principal and
an agent can be held liable for their participation in tortious activity.  See Leyendecker & Assoc., Inc. v.
Wechter, 683 S.W.2d 369, 375 (Tex. 1984). 
If an agent is acting within the scope of his general authority, his
wrongful act, though unauthorized, will nevertheless subject his principal to
liability.  Walker Ins. Servs. v.
Bottle Rock Power Corp., 108 S.W.3d 538, 554 (Tex. App.CHouston
[14th Dist.] 2003, no pet.).  Gregg does
not contend it did not act as J.M.K.=s agent,
nor does it claim any alleged representations made were outside the scope of
its authority.  The agency relationship
between Gregg and J.M.K. is yet another basis on which contribution may be
found. 

BMW and Tyson claim J.M.K. made
false representations regarding the truth and accuracy of the settlement
statement, the contract of sale, and the warranty deed.  Gregg has produced no evidence of Gregg=s lack of
involvement in the preparation of these documents or any representations
regarding them.  The absence of such
evidence constitutes a further reason that Gregg has failed to prove J.M.K. can
have no contribution claim against it.

In contrast, J.M.K. submitted the
affidavit of Jerome Karam testifying, without objection, that he was a party to
a conference call between Dick Gregg, Jr. and agents for BMW and Tyson, during
which Gregg represented to BMW and Tyson that J.M.K. Ahad
complied with all legal requirements to effect the conversion of the apartments
in the Bryn Mawr Complex to condominiums, and that the closing could proceed.@  Karam further testified Gregg made the same
representations to him, adding that the units Acould be
sold to and occupied by the third-party purchasers.@  Karam concludes, AWhen
J.M.K. 6, Inc. represented to the Plaintiffs that the conversion had been
properly done and that it had complied with all legal requirements in
connection with this conversion, J.M.K. 6, Inc. merely relayed to the
Plaintiffs what it had been told by its attorney, Mr. Gregg.@  For the purposes of reviewing the summary
judgment, we take Karam=s
statements as true.  Even in the absence
of this testimony, Gregg has failed to prove it is entitled to summary judgment
on J.M.K.=s contribution claim.








Gregg argues that it cannot be
held liable in contribution based on its alleged negligent misrepresentations
because BMW and Tyson have not sued J.M.K. for negligent
misrepresentation.  Gregg cites no
authority for the proposition that the plaintiff and the third-party plaintiff
must recite the same claim for a contribution claim to be effective, nor have
we found any such authority.  Moreover,
BMW and Tyson have sued J.M.K. for fraud in a real estate transaction.  The elements of this claim include a false
representation of a past or existing material fact, when the false
representation is (a) made to a person for the purpose of inducing that person
to enter into a contract; and (b) relied on by that person in entering into
that contract.  Tex. Bus. & Com. Code Ann. ' 27.01
(Vernon 2002).  This claim has elements
similar to negligent misrepresentation.  See
id.  Gregg=s
contentions regarding an absence of common liability are accordingly without
merit.  

2.         Claim for Indemnity

To a large extent, the arguments
Gregg advances against J.M.K.=s claim
for indemnity mirror those advanced and addressed regarding contribution.  The only additional ground alleged is the
bare assertion that Astatutory,
contractual, and common law indemnity are all inapplicable.@  Gregg acknowledges that common law indemnity
applies in cases of vicarious liability, but asserts that this is not such a
case.  

This assertion is unsupported by
evidence or authority.  In determining a
principal=s vicarious liability, Athe
proper inquiry is whether the agent was acting within the scope of the agency
relationship at the time of committing the act.@ Celtic
Life Ins. Co. v. Coats, 885 S.W.2d 96, 99 (Tex. 1994).  Gregg has neither asserted nor attempted to
prove that its alleged representations fell outside Gregg=s role as
J.M.K.=s agent
or the scope of Gregg=s
authority.  Although Gregg also states
that no contractual indemnity applies, it produced no evidence to support that
argument. 








3.         Gregg=s Claim
That No Misrepresentation Occurred

BMW, Tyson, Gregg and J.M.K. each
assert that the City of Pasadena Ahas taken
the position that no conversion to a condominium form of ownership ever
occurred.@[12]  In its reply brief to J.M.K.=s
response to the motion, Gregg asserted that no misrepresentation occurred
because Gregg complied with governing state law to convert the apartments to
condominiums, so that the City=s failure
to recognize the condominium conversion is simply unlawful. 

This court cannot affirm the trial court=s summary judgment on this ground
because Gregg did not expressly assert it in its motion for summary judgment in
the trial court.  See Stiles v.
Resolution Trust Corp., 867 S.W.2d 24, 26 (Tex. 1993) (holding appellate
court cannot affirm trial court=s summary judgment on a ground not expressly stated in motion
for summary judgment).   








Even if we could consider this
ground, it lacks merit.  A general law
and a city ordinance will not be held repugnant to each other if any other
reasonable construction leaving both in effect can be reached.  City of Richardson v. Responsible Dog
Owners of Tex., 794 S.W.2d 17, 19 (Tex. 1990).  However, because none of the parties have
identified the specific Pasadena ordinances at issue, we are unable to
determine if Gregg complied with Aall legal
requirements in this regard,@ as
asserted.  In addition, Gregg=s
contention does not address the alleged misrepresentation that the properties Acould be
sold to and occupied by the third-party purchasers,@ nor does
it address the misrepresentations alleged to be contained in the sales
documents given to BMW and Tyson.  In
light of these unaddressed legal questions and the fact issues, Gregg has
failed to satisfy its summary judgment burden to establish that J.M.K. has no
valid claims for contribution and indemnity.

VI.  Conclusion 

In sum, Gregg has established
that J.M.K.=s Legal Malpractice Claims are
time-barred.[13]  Therefore, we affirm the first summary
judgment rendered in favor of appellees on April 16, 2004.  Because Gregg has failed to meet its burden
to show that it is entitled to judgment as a matter of law on J.M.K.=s
remaining claims for contribution and indemnity, we reverse the second summary
judgment signed on July 8, 2004, and remand the case for further proceedings
consistent with this opinion. 

 

/s/        Eva M. Guzman

Justice

 

Judgment
rendered and Opinion filed March 28, 2006.

Panel
consists of Justices Fowler, Edelman, and Guzman. 

 

 











[1]  The claims
against Chicago Title Insurance Company are not before this court.





[2]  These included
insufficient space within and between the buildings; inadequate space between
condominium units and roads, storage buildings, dumpsters, and property
boundaries;  inadequate open space as
compared to roadways; inadequately sized patios, parking lots, private drives,
and access streets; and nonconforming curbs and gutters.  The Commission also informed Karam that he
was required to show or designate typical elevations and floor plans, the
direction the units would face, the size of private patios, the minimum
illumination, and the existence or location of privacy fences. 





[3]  BMW and Tyson agreed to consider
the answer timely filed. 





[4]  J.M.K.
additionally asks this court to hold that limitations are tolled Awhile the lawyer and client attempt to convince a
municipality that the lawyer=s representations were true.@  No evidence
has been advanced to demonstrate the existence, content, or veracity of Gregg=s representations to a municipality.  We therefore consider this argument
waived.  





[5]  The Aprosecution or defense of a claim@ is not limited to legal services provided in
connection with litigation.  For example,
in Gulf Coast Investment Corp. v. Brown, GCIC hired Brown to conduct a
non-judicial foreclosure sale of real property owned by the Smiths.  821 S.W.2d 159, 160B61 (Tex. 1991) (per curiam).  Brown allegedly failed to give
the Smiths proper notice before conducting the sale.  Id. 
The Smiths prevailed in a wrongful foreclosure suit against GCIC, and
after the case concluded nearly two years later, GCIC filed a legal malpractice
action against Brown.  Id.  In response, Brown asserted that CGIC=s malpractice suit was now barred by limitations.  The Texas Supreme concluded that Brown=s alleged malpractice in conducting the non-judicial
foreclosure sale occurred Ain the prosecution of a claim that resulted in
litigation.@  Id.  The Aclaim@ was the GCIC=s debt
claim against the Smiths= property, and Brown Aprosecuted@ the claim by conducting the foreclosure sale.  The prosecution of the claim resulted in
litigation when the Smiths filed a wrongful foreclosure action against
GCIC.  Because these facts met the
requirements of the Hughes rule, the Court concluded that limitations
governing GCIC=s malpractice claims against Brown were tolled until
the Smith suit (i.e., the resulting litigation) concluded.  In contrast to Brown, J.M.K. did not
have a Aclaim@ that Gregg was hired Ato
prosecute or defend,@ whether inside or outside of a litigation context.





[6]  As noted
above, Gregg does not assert that limitations bars the contribution and
indemnity claims.





[7]  52 Tex.
Jur. 2d, Setoff,
Counterclaim, & Cross Actions ' 4 (1964).





[8]  In fact, the section cites to National Stock Yards National Bank v. Valentine, 39 S.W.2d 907, 908 (Tex. Civ. App.CAmarillo 1931, no writ), which did not define the
phrase Across-action@ as a
synonym for a third  party claim, but as
a synonym for Acounter-claim@ (A[t]he law is settled in this state that a cross‑action
is an independent suit brought by the defendant against the plaintiff@) (emphasis added). 





[9]  J.M.K. quotes Gavenda v. Strata
Energy, Inc., in which the Court wrote, Awe note that [defendants] have filed a third-party
cross-action against the attorney [alleged to have committed malpractice].@ 705 S.W.2d 690, 693 (Tex. 1986)
(emphasis added).  We do not
agree with J.M.K. that a Athird-party cross action@ is a Across-claim@
permitted by section 16.069.  ACross-claim@ has a
narrower meaning than Across action,@
particularly in connection with statutes of limitations.  See Kim J. Askew & J. Adele
Hedges, 2 Tex. Practice Guide: Civil Pretrial ' 12:71 (Thompson/West 2005).





[10]  The present
case was filed before the effective date of the most recent amendments to
section 33.004.





[11]  See, e.g., Tex. Civ. Prac. & Rem. Code Ann. '' 9.001(1); 15.062(a); 31.008(h)(1); 33.011(1);
41.001(1); 42.001(1); 74.351(r)(4); 85.001(1); 86.001; 95.001(1); 147.001(2);
147.044(c) (Vernon 2005).





[12]  BMW and Tyson
claim they Alearned that the >condominium
units= each purchased were not, in fact, condominiums.  Apparently, among other things, J.M.K. had
failed to comply with the ordinances of the City of Pasadena, Texas requiring
properties to be used as condominiums to receive prior approval from the City
before their conversion.@  Similarly,
J.M.K. alleges Athat Gregg, on behalf of J.M.K., had failed to comply
with various City of Pasadena ordinances, and the City refused to recognize the
conversion to condominiums.@ 





[13]  J.M.K. argues it will be unable to
transfer liability for BMW and Tyson=s injuries to Gregg if it is unable to assert its own claim
for legal malpractice, but that is not the case.  The claims stand or fall on their own
merits.  J.M.K.=s ability to pursue the Legal
Malpractice Claims only affects its right to recover for its own damages, and does
not affect its ability to argue that the same core facts render Gregg liable
for BMW and Tyson=s damages.